## DOUGLAS DEWEY OBEY AND COLLEEN EVETTE THOMPSON *v.* STATE OF MARYLAND

[No. 243, September Term, 1969.]

*Decided February 16, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John F. Fader, II*, for appellants.

*Clarence W. Sharp, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Donaldson C. Cole, Jr., State's Attorney for Cecil County*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Douglas Dewey Obey and Colleen Evette Thompson [1] contend on appeal from a judgment against each of them in the Circuit Court for Cecil County that the court erred in accepting the plea of guilty of grand larceny entered by each of them. Each presents the same arguments in support of the contention: (1) neither had a clear recollection of the facts and circumstances surrounding the commission of the crime; and (2) the court failed to inform either fully of the constitutional right against self-incrimination and the right of cross-examination of witnesses.

We had occasion to review the requirements of an effective acceptance of a plea of guilty in *Holloway v. State*, 8 Md. App. 618 (1970). We found that the record must show that the plea of guilty was entered by an accused:

(1) voluntarily; and
(2) with an intelligent understanding:
    (a) of the nature of the offense; and
    (b) of the possible consequences of the plea; and
(3) unconditionally.

Here the court thoroughly canvassed the matter with each accused. See *Boykin v. Alabama*, 89 S. Ct. 1709;

---

1. The briefs give the name as "Colette Evette Thompson." It appears in the criminal information and throughout the record as "Colleen Evette Thompson."

*Silverberg v. Warden,* 7 Md. App. 657. We find that the record affirmatively shows that the plea was voluntary as not entered by reason of coercion, terror, inducements, or subtle or blatant threats, that it was made with an intelligent understanding of its possible consequences, and that it was not conditional. Appellants argue, however, that they did not enter the pleas with an intelligent understanding of the nature of larceny because their explanation of the facts and circumstances of the commission of the offense "was somewhat contradictory of that plea."

Upon inquiry by the court Obey gave his version of the facts and circumstances surrounding the events leading to his arrest. He said that he and Miss Thompson had come directly from a night club in New York to Elkton to get married. "We had been out all night and we were sitting in a tavern around here, waiting for the bus to come and about 6:30 we left the tavern to go across the street where the bus was," according to information they had received. It appeared that the bus usually stopped in front of the Colonial Jewelry Store. The door providing actual entrance to the store was set back from the street, so that there was a display window fronting on the street and also on the side approaching the entrance door. It was cold so they waited for the bus beside the window in the area leading to the entrance door. As they were awaiting the bus the side window got broken, although he did not remember how—"I know it got broken." He did remember picking rings off the ground but did not remember whether or not he took rings out of the window; "I was slightly intoxicated."

Colleen Thompson said they went to wait for the bus as Obey had recounted. Only the two of them were present when the window broke. At first she said Obey had not broken the window "intentionally," but when asked, "How did he come to break it?", she said that she did not know, "I don't even remember." She said that she picked the rings off the ground and they were in her hand when she was arrested; Obey had none in his pos-

session. Called upon for further explanation, Obey then said that he did not remember whether he picked any rings up or not. They left the scene, going down the block. They saw the bus drive away and he went into a tavern to make a telephone call.

It appeared that the bus driver saw Obey with his hand in the window "shuffling around the glass" and saw Colleen Thompson run toward the bus trying to wave it down.

From a statement Obey gave the police [2] it seemed that while they were waiting in the doorway of the jewelry store he remarked, "Look, the window is broke." He saw "a couple of rings laying on the ground and I picked them up and I handed them to her and I was getting ready to go further into the window. My fiancee said here comes the bus, and all of a sudden the glass shattered and the alarm started ringing.[3] I panicked and I started running. I left her there, I had one ring on my pinky. I ran in a back yard and the ring fell off, I ripped my pants."

Eight rings of a total value of $166.50 were found in the possession of Colleen Thompson. She complained about "taking cheap rings," interpreted by the State's Attorney from the gist of her remarks that she was mad because he didn't get a big haul and that they were in trouble about "something small."

It was brought out by defense counsel that Obey had an I. Q. of 145, and that he was employed by the New York Life Insurance Company as a computer programmer. Colleen Thompson "is by birth from the West Indies" and was four months pregnant with "child of Obey." The State entered a *nolle prosequi* of the remaining counts in each criminal information. The court then accepted each plea of guilty to grand larceny.

---

2. Obey expressly stated that the fact a statement had been given by him to the police had nothing to do with his entering a plea of guilty. Each defendant specifically waived, in open court, any evidentiary hearing on the issue of whether the confession was freely and voluntarily made.

3. The State's Attorney's impression was that after the original breaking and while the window was being looted, the glass remaining in the window shattered, setting off the alarm.

We find that the acceptance of the plea of guilty as to each defendant was proper and effective. It does not necessarily follow that because they alleged they did not have a clear recollection of all the facts and circumstances surrounding the commission of the crime, that they did not have an intelligent understanding of the nature of the offense to which they pleaded guilty. In any event, the acts they did recall were sufficient to constitute grand larceny—a wrongful taking of the personal property of another of the value of $100 or more with intent to deprive the person entitled thereto of his ownership therein, *Robinson v. State*, 4 Md. App. 515—particularly in the light of the evidence available to the State as was laid before them and the court. They now suggest that the court was obliged to pursue the intimation that they were intoxicated, relying on *Wayne v. State*, 4 Md. App. 424. Obey said they had been drinking. But he also said that he was only "slightly intoxicated" and the testimony as to the actions of each of them belied that either was intoxicated to a significant degree. We do not believe that, in the circumstances, the court was obliged to conduct further inquiry on the degree of intoxication of either of them, neither with regard to the general intent required for criminal conduct nor the specific intent required for larceny. See *Parker v. State*, 7 Md. App. 167; *Clarke v. State*, 3 Md. App. 447; *Michael v. State*, 1 Md. App. 243. *Wayne,* in which the defendant said he was pleading guilty because he was insane, is patently not apposite.[4]

The contention that the court failed to inform the appellants fully of the right against self-incrimination and the right of cross-examination of witnesses is without merit. Its recitation of their rights included the right to trial, either by jury or the court "with the right to be confronted by the witnesses who would be here to accuse you;" of the presumption of innocence at trial; of the

4. Each appellant here said, "Yes," in answer to the court's question, "You are pleading guilty because in truth and in fact you are guilty and for no other reason, is that correct?"

right not to testify; of the absence of any implication of guilt if they desired not to testify. They said they understood each of these rights. What the court told them was sufficient for them to understand that they had the right against self-incrimination and the right of cross-examination of witnesses appearing against them on trial. No specific ritual is required. See *Church v. State,* 5 Md. App. 642.

We hold, as to each appellant, that there was no error in the acceptance of the plea of guilty. Compare *Holloway v. State, supra.*

*Judgments affirmed.*