## DONALD LARRY McCALL v. STATE OF MARYLAND

[No. 302, September Term, 1969.]

*Decided March 19, 1970.*

192

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*W. Kennedy Boone, III,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

### THE PLEA OF NOLO CONTENDERE AND THE PLEA OF GUILTY

A defendant in a criminal cause may deny his culpability for the crime charged by pleading not guilty. He may dispute responsibility for his criminal conduct by a plea alleging that he was insane at the time of the commission of the offense.[1] He may admit that he committed

---

\* Note: *Certiorari* denied, Court of Appeals of Maryland, June 2, 1970.

1. Md. Code, Art. 59, § 9 (b). See *Strawderman v. State,* 4 Md. App. 689, 694.

the offense by pleading guilty. Or, he may plead *nolo contendere*,[2] and, by so doing, he asserts that he does not contest the charge. Md. Rule 720, authorizing these pleas, makes no distinction between felonies and misdemeanors.

*Effect of a Plea of Nolo Contendere—Effect of a Plea of Guilty*

A plea of *nolo* is not an admission of conduct as by so pleading an accused merely asserts that he does not desire to contest the charge. No verdict of guilty may be found on the entry of a plea of *nolo*, Rule 723 c, and thus it is not a conviction.[3] On the other hand, a plea of guilty is an admission of conduct, and, it results in a conviction. See *Smith v. State*, 5 Md. App. 633, 637-638. "[A] plea of guilty is more than an admission of conduct; it is a conviction." *Boykin v. State of Alabama*, 89 S. Ct. 1709, 1712. In the frame of reference of the case itself, that the entry of a plea of *nolo* is not a conviction [4] and the entry of the plea of guilty is a conviction, is the only material distinction between the two pleas. Otherwise the effect of the entry of each plea is the same. The plea of

2. "Latin: 'I do not wish to contend.'" The American Heritage Dictionary of the English Language (1969).

3. Compare the power of the court to place an accused on probation without finding a verdict with his written consent before conviction and without such consent after conviction or after a plea of guilty or *nolo contendere*. Code, Art. 27, § 641. See *Code of the Public Local Laws of Baltimore City* (Everstine) 1969 Ed., § 22-83, pp. 182-183. See also *Skinker v. State*, 239 Md. 234.

4. As to the effect outside the case of the entry of a plea of *nolo*, a question arises, since the accused does not stand convicted of a crime, whether the fact that a criminal charge against him has been disposed by the entry of a plea of *nolo* may be shown to impeach his credibility as a witness in other cases. Authority in other jurisdictions is divided. See Annot., 146 A.L.R. 867 (1943) for a general discussion of the point. But in *Skinker v. State, supra*, the Court said, as to probation without verdict, "Avoidance of the stigma of a criminal record, indeed, is the *raison d'etre* of the procedure." At p. 239. As Rule 723 c precludes the finding of a verdict of guilty on a plea of *nolo*, it would seem that the *raison d'etre* of authorization of a plea of *nolo* would be the same.

We note that, by the weight of authority, a consequence outside the case of the entry of a plea of *nolo* is, as a general rule, that the plea does not estop the defendant to deny the facts upon which the prosecution was based in a subsequent civil suit. See "The Plea of Nolo Contendere", 25 Md. Law Review, pp. 233-235 (1965) and cases cited in note 61 at p. 233.

*nolo,* just as the plea of guilty, has the effect of submitting the accused to punishment by the court; following the entry of either plea the court shall proceed to determine and impose sentence. See Rule 723 b and c; *Kercheval v. United States,* 274 U. S. 220, 223. And each plea is governed by the same waiver rule—it waives all procedural objections, constitutional or otherwise, and nonjurisdictional defects. *Frazier v. Warden,* 243 Md. 676; *Fix v. State,* 5 Md. App. 703.[5]

*The Procedure for the Entry of a Plea of Nolo Contendere and a Plea of Guilty*

"An accused who desires to enter a plea of *nolo contendere* must apply to the court for permission to enter this plea. The court may require the accused to provide such information as it deems necessary to enable it to determine whether or not it will consent to the entry of this plea." Rule 723 a. Thus it is patent that the entry of the plea is discretionary with the court. And it follows that the withdrawal of a *nolo* plea and substitution of another plea would also be in the discretion of the court.

Since the entry of a *nolo* plea is equivalent to the entry of a plea of guilty, each submitting the accused to punishment by the court and waiving all procedural objections, constitutional or otherwise, and nonjurisdictional defects, we think it clear that, with an exception discussed *infra,* the requirements for the sound exercise of judicial discretion as to acceptance of a plea of guilty and as to consent to the entry of a plea of *nolo contendere* are the same.

We discussed the requirements of an effective acceptance of a plea of guilty in *Holloway v. State,* 8 Md. App. 618 (1970), in finding that the plea had not been properly accepted, and in *Obey and Thompson v. State,* 8 Md. App. 716, in finding that the plea had been

---

5. In *Wood v. Director,* 8 Md. App. 550 (1970), we held that an individual "has been convicted and sentenced * * * for a crime or offense" within the meaning of Code, Art. 31B, § 6, when he has been sentenced by a trial court under a plea of *nolo contendere.*

properly accepted. We said that the record must affirmatively show that the plea of guilty was entered by an accused:

(1) voluntarily—that is not through coercion, terror, inducements, or subtle or blatant threats; and

(2) with an intelligent understanding—that is not through ignorance or incomprehension:
   (a) of the nature of the offense; and
   (b) of the possible consequences of the plea; and

(3) unconditionally.[6]

These requirements have been established as the law of this State. See *Duvall v. State*, 5 Md. App. 484. While no specific ritual is required of the court in ascertaining the existence of the requirements, *Church v. State*, 5 Md. App. 642, they may not be presumed from a silent record, *Carnley v. Cochran*, 369 U. S. 506, 516. Although formerly, as stated in *Cooper v. State*, 231 Md. 248, 253, a plea of guilty entered by a defendant, who was represented by counsel and capable of participating in his own defense, was ordinarily accepted as a matter of course and, on review, in the absence of a showing to the contrary, the trial court would be presumed to have done all that was required of it in receiving the plea, the Court of Appeals made known in *James v. State*, 242 Md. 424, 428, that this was no longer the rule and that the *voluntary* nature of defendant's plea must be clearly established prior to a court's accepting a guilty plea. But in *James* the Court was not prepared to go so far as to hold that an accused, whose plea was not shown to be involuntary, and who was represented by experienced counsel, who had, by the accused's own admission, advised him on the possible consequences of the guilty plea, must be further advised by the court on a subject of which the accused already professed knowledge. Remarking that it

6. For a discussion of the requirement that the plea be unconditional see *Wayne v. State*, 4 Md. App. 424, 429-430.

was "not yet committed to the principle that the court is required to assume the role of a co-counsel to the defense," it noted that "[o]f course, there is no objection to the trial judge's making further inquiry, and most of them, as a precautionary measure, are doing so." 242 Md. at 429. In *Owens v. State*, 243 Md. 719, the Court said, at 721:

> "It is fundamentally a basic right that an accused be advised of the nature of the charges against him and of the consequences of a plea of guilty, * * *; and this is implicit in a knowing acceptance by the court of a guilty plea. It is not, however, mandatory that the judge ritualistically and personally advise the accused of these matters. It is quite sufficient that the accused be in fact made aware of the consequences of his guilty plea regardless of the source whence the information comes. That the defendant is aware of the nature of the charges and of the consequences of a guilty plea is the duty of the court to ascertain, but the court need not follow any ritualistic formula in reaching its determination. While it might have been the better practice for the trial judge to put the accused on notice of his rights officially, in open court, it was sufficient under the circumstances of this case for the accused to be made aware of those rights through his own lawyer." (citations omitted).

But while it is not absolutely necessary that the trial court personally make inquiry of a defendant, although it is the better practice for it to do so, we think it obvious that in order for the court to fulfil its duty of ascertaining that a defendant has an intelligent understanding of the nature of the offense and of the possible consequences of the plea, and in order for the record to make an affirmative showing, it must have before it the substance, at least, of what counsel informed and advised

the defendant with regard thereto. Thus a mere statement by defendant's counsel to the court that he had made known to his client the nature of the offense and the possible consequences of the plea and that the defendant said he understood, would not be sufficient.

There was no requirement in this jurisdiction for the effective acceptance of a plea of guilty that the court have before it information sufficient to show that the conduct which the defendant admitted constituted the offense charged and to which he pleaded guilty. But even so, if the record showed that the court had before it information as to the conduct of the defendant, the acceptance of the plea of guilty would not be effective unless such information, as admitted by the defendant, was sufficient to constitute the offense. A defendant could not be said to have an intelligent understanding of the nature of the charge unless the version of his conduct which he accepted was sufficient to constitute the offense to which he pleaded.

It was on this state of the law in this jurisdiction that the Supreme Court decided *Boykin v. State of Alabama, supra,* on 2 June 1969. We held in *Montanye v. State,* 7 Md. App. 627 that *Boykin* is not retroactive and, amplifying our holding in *Silverberg v. Warden,* 7 Md. App. 657, we said that *Boykin* should not be applied retroactively to guilty pleas accepted prior to 2 June 1969. We left open whether *Boykin* enunciated a rule that personal inquiry by a state trial judge of the defendant with respect to a plea of guilty is required as a matter of federal constitutional due process. We do not believe that it is.

Federal Criminal Rules of Procedure 11, as amended in 1966, directs a district judge personally to address a defendant who pleads guilty, inquiring whether he understands the nature of the charge against him and whether he is aware of the consequences of his plea. This procedure embodied in Rule 11 has not been held to be constitutionally mandated, see *Waddy v. Heer,* 383 F. 2d 789 (6th Cir. 1967), but *McCarthy v. United States,* 89

S. Ct. 1166 rejected the idea that the Rule can be complied with although the district judge did not personally inquire whether the defendant understood the nature of the charge. At 1171. There is no Maryland Rule requiring personal inquiry by the trial judge and, of course, the federal rule is not applicable to state courts. We do not construe the opinion of the court in *Boykin* as holding that personal inquiry by the trial judge is constitutionally mandated,[7] although we think it makes clear that it is the better practice for the trial judge to do so. It established no general guidelines but it said, at 1712-1713:

> "What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When *the judge discharges that function, he leaves a record adequate for any review that may be later sought* * * * and forestalls the spinoff of collateral proceedings that seek to probe murky memories." (emphasis added; citations omitted)

The precise holding in *Boykin* was that it was error for the state trial judge to accept a plea of guilty without an affirmative showing on the record that it was intelligent and voluntary. 89 S. Ct. at 1711. As we have stated, this was the law of this State prior to the *Boykin* opinion. See *Duvall v. State, supra,* at 487. But while we have recognized generally that federal constitutional rights were involved in the waiver that takes place when a plea of guilty is entered, what *Boykin* did was to specify three such rights which are among those so involved. They

---

7. However, Mr. Justice Harlan, joined by Mr. Justice Black, said in his dissenting opinion: "So far as one can make out from the Court's opinion, what is now in effect being held is that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal constitutional due process." 89 S. Ct. at 1714.

are: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. Although other federal constitutional rights are also involved, *Boykin* made clear that if the record does not affirmatively show that a defendant had an intelligent understanding that he possessed each of these specified rights and voluntarily waived them, the acceptance of a plea of guilty would not be effective in any event.

We construe *Boykin* as also requiring, as constitutionally mandated, that the record affirmatively show that there was a factual basis for the plea. In Note 7 at p. 1713 it quoted from *Commonwealth et rel. West v. Rundle*, 428 Pa. 2d 102, 105-106, 237 A. 2d 196, 197-198 (1967):

> "A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, *inter alia*, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, *the acts sufficient to constitute the offenses for which he is charged,* and the permissible range of sentences." (emphasis supplied)

Thus in this jurisdiction since *Boykin*, the trial court must determine that the conduct which the defendant admits constitutes the offense charged to which he has pleaded guilty. Requiring this determination of the relation between the law and the acts which the defendant admits having committed is designed to protect a defendant who is in the position of pleading voluntarily with an understanding nature of the charge but without realizing that his conduct does not actually fall within the charge. And the record must affirmatively show the acts which the defendant admits which served as the

basis for the court's determination. We think it preferable that such determination by the court be made before the acceptance of the plea of guilty.

We point out that the determination of the factual basis for the plea is predicated upon conduct of the defendant which he admits. Therefore, insofar as the acceptance of the guilty plea is concerned, it is not a question of the credibility of the defendant or the weight to be given to facts and circumstances with regard to that conduct nor is it a matter of resolving conflicting information before the court regarding his conduct. The inquiry is not a matter of what the State may be able to prove on a trial of the merits, but is confined to what the defendant admits he did. If the conduct which he admits is not sufficient to constitute the offense to which he pleads guilty, the plea shall not be accepted. To the extent that this is a departure from our holding in *Gopshes v. State,* 1 Md. App. 396, *Gopshes* is overruled. Of course, the requirement that there must be a factual basis for the plea is to be distinguished from the rule that a valid plea of guilty makes unnecessary the production of evidence to support the indictment. *Fix v. State,* 5 Md. App. 703, 712. An effective plea of guilty obviates the necessity for the State to meet its burden of proof of the guilt of the defendant for he has confessed it. We note further, that the rule that the acceptance of a guilty plea is not effective unless the court determines from facts and circumstances appearing in the record that there is a factual basis for the plea is to be distinguished from the rule that the fact that there may have been a defense raised to the crime charged, if there had been no guilty plea, does not, of itself, make an otherwise valid entry of a guilty plea ineffective. See *Palacorolle v. State,* 239 Md. 416, 421.

We believe that *Boykin* impressed upon the rule followed in this State prior to its opinion with respect to the acceptance of a plea of guilty only the need for the specific inclusion of the three designated constitutional rights and the requirement that the trial court deter-

mine, preferably prior to acceptance of the plea, upon proper showing appearing in the record, that there was a factual basis, accepted by the defendant, sufficient to constitute the offense to which the plea was tendered. So for a guilty plea to be effective after 2 June 1969, there must be compliance with the rule established in this State as refined by *Boykin*.

We have said that for a plea of *nolo contendere* to be effective, the consent of the court to its entry must be upon the same requirements as to the acceptance of a plea of guilty with one exception. That exception involves the factual basis for the plea. The exception arises because, as we have pointed out, a plea of *nolo* is not an admission of conduct while a plea of guilty is such an admission. The conviction upon the entry of a plea of guilty flows from his admission of conduct. Therefore it is essential that the conduct which the accused admits constitute the offense charged. On the other hand, since the accused by a plea of *nolo* does not admit conduct alleged, expressly asserting by such plea that he does not contest the charge, and since a conviction does not flow from the plea, it is not essential that conduct constituting the offense be admitted or accepted by him. All that is required is that the State satisfy the court that there is a factual basis for the plea of *nolo*. We believe it implicit that by seeking permission of the court to enter a plea of *nolo*, the accused is saying that although he may not agree with the State's version of his conduct, he does not contest, in the criminal cause, that it constitutes the offense, throwing himself on the mercy of the court, not only to assure the avoidance of the stigma of a conviction with the attendant possible consequences outside the case, but to have the opportunity to mitigate his punishment. Thus it is proper that his admissions of conduct go not to the intelligent understanding of the nature of the offense, but to the consideration of the court in mitigation of punishment. So while the record must affirmatively show that the plea of *nolo* was entered voluntarily, and with an intelligent understanding of the nature of

the offense and its possible consequences, and unconditionally, it may well be that the plea would be effective when there is a factual basis shown sufficient to constitute the offense even though that factual basis is not accepted by the accused. In short, that he states the factual basis shown by the State was incorrect goes to mitigation of punishment and not to the effectiveness of his plea of *nolo*. In such context his conduct as admitted by him may render a plea of guilty ineffective but would not preclude the entry of a plea of *nolo*.

## THE INSTANT CASE

Donald Larry McCall (appellant) was charged under warrants with twelve offenses of obtaining money and goods by a false pretense, "namely a worthless check", with intent to defraud as proscribed by Code, Art. 27, § 142; with one offense of assault and two offenses of malicious destruction of property. The cases came on for trial on 26 May 1969 in the Circuit Court for Cecil County, appellant having prayed a jury trial before a trial magistrate. He applied for permission to enter a plea of *nolo contendere* in each case and the court required him to provide information to enable it to determine whether or not it would consent to the entry of the pleas. Appellant told the court that he did not now desire a jury trial. The court conducted the following inquiry in open court as shown by the transcript of the proceedings:

"THE COURT: You are here this morning because Mr. McCall prayed a jury trial in the Magistrate Court, is that correct?

MR. GOODRICK (defense counsel): That is a correct statement, your Honor.

THE COURT: Mr. McCall, I want to ask you that question too for the record, Is that correct?

DONALD LARRY McCALL: Yes, sir.

THE COURT: All right. And has Mr. McCall

made a confession or given a statement in this case, Mr. Goodrick, if you know?

MR. GOODRICK: No, sir.

THE COURT: No confession, no statement, is that right, Mr. McCall?

DONALD LARRY McCALL: Yes, sir.

THE COURT: All right. Has there been any meaningful interrogation by the police or the State's Attorney concerning these offenses, where questions and answers have been taken down?

MR. GOODRICK: No, sir.

THE COURT: Is that right, Mr. McCall?

DONALD LARRY McCALL: I believe so.

THE COURT: Do you know?

DONALD LARRY McCALL: I don't know for sure, no sir.

THE COURT: Have you been questioned?

DONALD LARRY McCALL: I was questioned by the Town man, sir.

THE COURT: Did you make any statement?

DONALD LARRY McCALL: No, sir.

THE COURT: You made no statement?

DONALD LARRY McCALL: No, sir.

THE COURT: All right, you may sit down.

Mr. Cole, on behalf of the State, what is your recommendation as to whether or not we should accept this plea of nolo contendere?

MR. COLE (State's Attorney): Your Honor, I don't really care. It makes no difference to me. I would add, I didn't enter into any pre-arrangements with Mr. Goodrick on this charge. It is new to me.

MR. GOODRICK: I will concur in that. I didn't discuss it with the State's Attorney.

MR. COLE: I don't really care.

THE COURT: All right. Perhaps I should ask a few more questions.

Mr. McCall, stand up again please. You realize

that by a plea of nolo contendere that you waive your right to object to procedural defects, defects in the proceedings?

DONALD LARRY McCALL: Yes, sir.

THE COURT: All right. And you waive your right to have such defects in the proceedings considered on any appeal? Is that clear to you?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Mr. Cole, correct me if I am wrong, but do you realize that the penalty which may be imposed on each of these 13 counts concerning worthless checks is 18 months plus a fine of $500 in each case? Are you aware of that?

DONALD LARRY McCALL: Yes, sir.

THE COURT: And that in the case of malicious destruction of property, the destruction of Carl Brady's rifle, I think it was, that the possible sentence is one year confinement and a $500 fine?

DONALD LARRY McCALL: Yes, sir.

THE COURT: And do you finally realize that for the assault and battery on Carl Brady there is no limit except what would amount to cruel and unusual punishment which the Court may give you?

DONALD LARRY McCALL: Yes, sir.

THE COURT: You realize all those things?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Have you discussed this plea with your attorney, Mr. Goodrick?

DONALD LARRY McCALL: Yes, sir.

MR. GOODRICK: I might add, sir, for the record, that discussion has been somewhat limited in the amount of time we have had. I want to know whether he would like some more time at this time.

THE COURT: Yes, would you like more time?

DONALD LARRY McCALL: I believe I would, yes.

THE COURT: You would, all right. I think we better stop right there, if you want more time. You go ahead and discuss it with your attorney.

MR. GOODRICK: Thank you. I won't take a great deal of time, but I do feel that because of the —

THE COURT: All right. Go over his constitutional rights with him, Mr. Goodrick, it is free and voluntary, no inducements, all those questions I am going to ask him when he comes back.

MR. GOODRICK: Very good, sir.

THE COURT: Very good. Take a short recess while you discuss it with him.

(A recess was taken.)

AFTER RECESS * * *

THE COURT: * * * Now, having taking approximately 20 minutes recess, Mr. Goodrick, are you ready to proceed further at this time?

MR. GOODRICK: Yes, sir. During that recess I did advise the accused of what a plea of nolo contendere was, its effect, his rights under the constitution to a jury trial, court trial, right to examine witnesses, and his right to confront his accusers, right to cross-examine them, and subsequent rights thereto, assuming a finding of guilty by the court, and to appeal.

I am reasonably sure at this stage he is more informed of his rights, more knowledgeable of what a plea of nolo contendere means, and is prepared now to be interrogated by the Court relative to this.

Further, I might add that as a result of our discussion, I am sure he will support

me in this, it is not his intention, I repeat, not his intention, to enter a plea of nolo contendere in criminal 2005 or 2008, that being malicious destruction of property in 2005, and in 2008, the assault upon Carl Brady. These charges will be pleaded to as not guilty. As to the other, the accused will enter a plea of nolo contendere, and it is on the various counts that he wishes the Court to consider the plea.

THE COURT: I don't mean to be lengthy about this, but we have got 15 cases, and I am going to ask you to arraign him on each one, please. Bring him forward. I want an arraignment, whether or not he waives, and so forth, in each of those 15 cases.

MR. GOODRICK: May I, sir, before doing so, you were in the process of interrogating him. Have you concluded that interrogation?

THE COURT: I have not concluded the interrogation, but I want to get his pleas clearly in the record in each case so we will know what we are talking about.

MR. GOODRICK: Very good, sir.

THE COURT: Would you open the file, Mr. Clerk, and read each one separately, please. * * *."

Thereupon the Clerk arraigned appellant on each warrant. He pleaded not guilty and prayed a jury trial to each charge of malicious destruction of property and to the charge of assault. He pleaded *nolo contendere* to each of the remaining charges. The transcript continues:

"THE COURT: Now, Mr. McCall, prior to the recess I asked you certain questions, and you had given certain answers. After having had an opportunity to confer further with your attorney during that recess I

would ask you with the exception of your change of plea from nolo contendere to not guilty and election of jury trial in three cases, with that exception would your answers to the questions that I asked you be the same as they were before?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Now, having discussed these matters with your attorney, I would ask you if he has explained your rights to you insofar as the right to enter a plea of not guilty, to have a jury or a Court trial as you might choose, to require your accusers to appear before you and to confront you with the evidence which they have, at which time you would have a right to cross-examine them and ask them questions that are proper, and your further right to produce witnesses on your own behalf and in your own defense, and your further right to testify yourself if you want to, or to refuse to testify if you do not want to, and if you refuse to testify, it will have no bearing at all upon your guilt or innocence, and that you would have under a not guilty plea a right to appeal, and while I do not mean to say you do not have that right under a nolo contendere plea, that you have a right to raise certain questions under a not guilty plea which you do not have a right to do under a nolo contendere plea. Are all of these things clear to you?

DONALD LARRY McCALL: Yes, sir.

THE COURT: And you are making this plea of nolo contendere freely and voluntarily without threat or fear to yourself or to anyone closely related to you or associated with you?

DONALD LARRY McCALL: Yes, sir.

208

THE COURT: Has anybody made any promise of a lesser sentence or probation or reward or immunity or anything else in order to induce you to plead nolo contendere?

DONALD LARRY McCALL: No, sir.

THE COURT: You understand that the matter of probation and/or sentence or fine is to be determined solely by the Court?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Have you had sufficient time in this matter to confer with your attorney?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Are you satisfied with the representation by your attorney, so far?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Are you presently under the influence of alcohol?

DONALD LARRY McCALL: No, sir.

THE COURT: Are you under the influence of drugs or narcotics?

DONALD LARRY McCALL: No, sir.

THE COURT: Are you suffering from withdrawal symptoms of the use of drugs or narcotics?

DONALD LARRY McCALL: No, sir.

THE COURT: Is your answer no, sir?

DONALD LARRY McCALL: Yes, sir.

THE COURT: With the circumstances of this case as it now stands the Court will accept the plea of nolo contendere in the following criminal causes: 2006, 2007, 2009, 2010, 2011, 2012, 2013, 2015, 2016, 2017, 2018 and 2019."

Appellant addressed the court before sentences were imposed. The transcript reads:

"DONALD LARRY McCALL: Your Honor, the only thing I have to say, I did cash the checks.

THE COURT: Speak up, please.

DONALD LARRY McCALL: I did cash the checks, sir. And I went to Georgia, left the State and went to Georgia.

THE COURT: Went to the State of Georgia?

DONALD LARRY McCALL: Yes. Before I left I did give my wife $200 to put in the bank for these checks, which she didn't do, now, there is no way that I can prove this. I am just volunteering it. That is all I have to say.

THE COURT: All right.

MR. GOODRICK: Your Honor, if it please the Court, Mr. McCall did appear before Magistrate Huester on these charges, and at that time I did interrogate his wife, and she denies having received it. But by the same token, Mr. McCall maintains that he did in fact give it to her. So I did attempt to ascertain whether or not in a prior matter, or prior hearing, this money had been given. But I couldn't get her on examination or cross-examination to tell. I haven't seen her subsequent to that date, although Mr. McCall indicated that she was to see me. She never did come to see me, although he himself indicated that she would.

DONALD LARRY McCALL: She said she would. My wife was in the Magistrate's court, did tell me that she was going to see Mr. Goodrick and tell him that I gave her the money.

THE COURT: Tell you what?

DONALD LARRY McCALL: That I did give her the money.

THE COURT: How old are you?

DONALD LARRY McCALL: Twenty-six, sir.

THE COURT: How far did you go in school?

DONALD LARRY McCALL: I completed the

10th grade and got my high school equivalent.

THE COURT: Do you have your high school diploma?

DONALD LARRY McCALL: Yes, sir.

THE COURT: Where did you get that?

DONALD LARRY McCALL: Hagerstown, Maryland Correctional School.

THE COURT: Do you mind telling me what your previous record is as far as confinement, convictions? Any statement you make is going to be voluntary at this point. I don't want any question raised about it later on.

DONALD LARRY McCALL: I had a three-year sentence for forgery.

THE COURT: And did you serve time for that?

DONALD LARRY McCALL: Yes.

THE COURT: How long did you serve?

DONALD LARRY McCALL: Approximately 18 months. Put on parole.

THE COURT: Out of Hagerstown?

DONALD LARRY McCALL: Yes, sir.

THE COURT: You received five years after violating probation?

DONALD LARRY McCALL: Yes, sir.

THE COURT: So this is your third time in for a series of forgeries, am I correct?

DONALD LARRY McCALL: No, this is not forgery.

MR. GOODRICK: This is not forgery, sir.

THE COURT: Bad checks, excuse me. Bad checks. What have you done with your life? What kind of work have you done during your life?

DONALD LARRY McCALL: Sir?

THE COURT: What kind of work have you done during your life? You are 26 years old.

DONALD LARRY McCALL: At Hagerstown I was a clerk.

THE COURT: You were a clerk?

DONALD LARRY McCALL: Yes, sir. I worked on a farm, chemical factory, maintenance in a hospital. I have done just about a little bit of everything.

THE COURT: When did you get married?

DONALD LARRY McCALL: August 26, 1963.

THE COURT: Almost six years ago.

DONALD LARRY McCALL: Yes, sir.

THE COURT: How long did you and your wife live together, when you were out?

DONALD LARRY McCALL: We separated.

THE COURT: When?

DONALD LARRY McCALL: Since we have been married we separated approximately 20 or 25 times, sir.

THE COURT: Anything else you want to tell me?

DONALD LARRY McCALL: No, sir.

THE COURT: Are you an alcoholic?

DONALD LARRY McCALL: I believe so, yes.

THE COURT: You believe so?

DONALD LARRY McCALL: Yes."

The court imposed sentence.[8]

Appellant now contends that the court erred in consenting to the entry of his pleas of *nolo contendere*. In support of the contention he simply asserts that the pleas were not made voluntarily and that "he was not aware of the consequences of such a plea especially that which limits his appeal strategy."

We have no difficulty in determining that the record

---

8. The State then entered a *nolle prosequi* as to one of the warrants charging malicious destruction of property and as to the warrant charging assault. It took no action at that time as to the other warrant charging malicious destruction of property pending further investigation. The ultimate disposition of that charge is not revealed by the record before us.

212

affirmatively shows that the pleas of *nolo* were entered by appellant voluntarily, unconditionally and with an intelligent understanding of the possible consequences of the pleas. Appellant expressly stated to the court that they were freely and voluntarily made without threat or fear to himself or to anyone closely related to or associated with him and without any promise or inducement and there was no indication that they were not so made or that they were made in any way conditionally. We think the record on its face shows that appellant's constitutional rights relating to the plea were sufficiently explained to him, and specifically as to his right against compulsory self-incrimination, his right to a jury trial and his right to confront his accusers, both by his counsel and the court. He stated that his rights were clear to him and we think it patent that he waived them freely and intelligently. As to the possible consequences of the pleas, he was advised by the court as to the authorized sentence for the offense and as to his right to appeal, the court informing him that he could raise certain questions upon conviction after plea of not guilty that he might not be able to raise on appeal after sentence on a plea of *nolo contendere*.[9] With regard to whether the pleas were made with an intelligent understanding of the nature of the offense, we find it clear from the record that appellant understood that he was pleading to offenses of obtaining money by false pretenses and the nature of that crime. At one point he called to the attention of the court that it was not forgery with which he was charged; and it was adduced that he was not without prior criminal experience in such matters. As to the factual basis of the pleas, appellant admitted that he cashed the checks involved, and we think it obvious from what he told the court that there were not sufficient funds in the account on which they were drawn to cover them

9. We observe that in seeking permission to plead *nolo contendere* and discussing it, defense counsel brought to the attention of the court that by so doing appellant would "avoid civil liability * * * it absolves one of civil liability."

when they were cashed. He said he left the State after cashing them. He added, "before I left I did give my wife $200 to put in the bank for these checks, which she didn't do, now there is no way that I can prove this. I am just volunteering it. That is all I have to say." Had his pleas been guilty, his last statement would have obliged the court to conduct further inquiry as to the factual basis for the pleas. If, on such inquiry, he said that he was a *bona fide* resident of Maryland and that he had given his wife the money to cover the checks within such time as would have enabled her to deposit it with the drawee within ten days after he had cashed the checks, the statutory presumption that he cashed the checks with intent to cheat and defraud would, at that point, be rebutted and there would be no factual basis, admitted by him, sufficient to show the offense charged. See Md. Code, Art. 27, § 142; *Waye v. State,* 231 Md. 510. Cf. *Maki v. State,* 239 Md. 311. Upon such factual posture, acceptance of pleas of guilty would have been precluded, for, as we have pointed out, it would be immaterial, insofar as the effectiveness of the pleas of guilty were concerned, whether or not, on a trial of the merits, he would be able to meet his obligation of showing that he had no actual intent to defraud. See *Waye v. State, supra.* But here, where the pleas were *nolo contendere,* no further inquiry by the court was necessary to effect valid consent to the entry of the pleas, for, as we have also pointed out, it was not essential that conduct sufficient to constitute the offense charged be admitted or accepted by him.

We hold that there was no abuse of judicial discretion in the consent to the entry of appellant's pleas of *nolo contendere,* that there was no error in their entry, and that the pleas were effective.

*Judgments affirmed.*