Robert A. ABRAMS, Jr.

v.

WARDEN, MARYLAND PEN-
ITENTIARY.

Civ. No. 70-244.

United States District Court,
D. Maryland.

May 25, 1971.

R. Carleton Sharretts, Jr., Baltimore,
Md., and Roger C. Duncan, Towson, Md.,
for petitioner.

Francis B. Burch, Atty. Gen., of Mary-
land, and Alfred J. O'Ferrall, III, Asst.
Atty. Gen., of Maryland, for respondent.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District
Judge.

Petitioner, presently at liberty on bail
under an order of a Maryland court pend-
ing the outcome of the within proceed-
ings, was sentenced to a period of eight
years' confinement by Judge Albert L.
Sklar in the Criminal Court of Balti-
more on January 14, 1969, after Abrams
had entered a plea of guilty to the charge
of armed robbery.[1]

In this petition for writ of habeas cor-
pus, petitioner, with the aid of privately
retained counsel, alleges that the circum-
stances surrounding his guilty plea on
November 21, 1968 were such as to ren-
der said plea involuntary.

### I.

Specifically, petitioner alleges:

(1) The guilty plea was not volun-
tary.

(2) The guilty plea was entered with-
out knowledge of all consequences of the
plea.

(3) The trial court failed fully to ad-
vise the petitioner of the true conse-
quences of the guilty plea.

1. On October 24, 1968, Abrams entered a
plea of not guilty. The case was schedul-
ed for trial on November 21, 1968. On
that date, Abrams changed his plea to
guilty.

(4) There was insufficient evidence affirmatively to show that the guilty plea was made with a full understanding of the nature of the offense.

(5) The trial court failed to inquire into the validity of petitioner's plea after the petitioner, in writing to the Court, and prior to the imposition of sentence, notified the Court that petitioner was innocent of the charge and did not want to plead guilty.

(6) Deprivation of petitioner's right to due process of law.

Those contentions were unsuccessfully raised by petitioner in a post-sentencing hearing before Judge Sklar on February 13, 1969 and also in a post-conviction hearing before Judge Basil A. Thomas in the Criminal Court of Baltimore. Petitioner's application for leave to appeal the denial of post-conviction relief by Judge Thomas was denied by the Court of Special Appeals of Maryland on November 26, 1969 in an unreported per curiam opinion. The record in this case includes the transcripts of the proceeding at which petitioner pled guilty before Judge Sklar on November 21, 1968, the sentencing proceeding on January 14, 1969 before Judge Sklar, the post-sentencing hearing presided over by Judge Sklar on February 13, 1969, and the post-conviction hearing presided over by Judge Thomas on September 19, 1969. Judge Sklar and Judge Thomas both concluded that Abrams' guilty plea was given voluntarily and with an understanding of the nature of the plea and of its consequences.

Abrams was represented up to and including his sentencing on January 14, 1969 by privately retained counsel, Milton B. Allen, Esq., an attorney with long experience in the field of criminal law, and presently State's Attorney for the City of Baltimore. At the February 13, 1969 hearing before Judge Sklar and in the post-conviction proceeding before Judge Thomas, Abrams was represented by R. Carleton Sharretts, Jr., Esq. In the within proceeding, he is represented by Mr. Sharretts and by Roger C. Duncan, Esq.

Abrams contends, and contended at the hearing on February 13, 1969 and in the post-conviction hearing, that he pled guilty on November 21, 1968 because, prior to his so doing, Mr. Allen promised him he would be placed on probation. On November 28, 1968, while Abrams was held in custody during the preparation of a presentence report, Abrams wrote a letter to Judge Sklar. In that letter, he asked Judge Sklar "to see [him] for five or ten minutes," but did not mention any such promise or reason for pleading guilty, though he did indicate implicity that he no longer had "trust in Mr. Allen." Mr. Allen, in his testimony on February 13, 1969, related his pre-November 21, 1968 discussions with his client, his investigation of the case, and the reasons why he advised Abrams to plead guilty. Mr. Allen denied making any promise of probation to Abrams. (Tr. 82–83). It is clear that Mr. Allen—and his client—hoped for probation, but a disappointed and unrealized hope does not vitiate the voluntary and understanding nature of a guilty plea. Verdon v. United States, 296 F.2d 549, 553 (8th Cir. 1961).

At the conclusion of the hearing on February 13, 1969, Judge Sklar stated (at Tr. 99–100):

* * * The Court is in the unique position to know at the time of the hearing, at the time of the entering of the plea as to the demeanor of the defendant and as to the knowledgeability and as to the consequences of a plea of guilty, stated as being a maximum term of twenty years. There is no question in this Court's mind that the defendant knew what he was doing when Mr. Allen entered a plea of guilty for him. The transcript also discloses "When you say participate you mean the robbery which took place September, 1968, wherein a deadly weapon was used." The defendant's answer was in the affirmative. * * *

The record clearly supports Judge Sklar's—and Judge Thomas'—factual conclusions.

On November 21, 1968, while Judge Sklar did not himself advise Abrams as to all details of the consequences of his plea, Mr. Allen questioned Abrams on the record, in open court in the presence of Judge Sklar, as to the circumstances surrounding his guilty plea, and specifically as to Abrams' knowledge of the maximum sentence possible for the crime charged and as to the lack of any threats (11/21/68 Tr. 3–4).

■ Abrams has alleged that his guilty plea is void since he did not understand the "nature of the offense" with which he was charged. Specifically, petitioner claims that his answer of "yes" to the question of the Court at the time he plead guilty, namely: "By pleading guilty you are admitting that you did participate in this robbery, is that correct?" (11/21/68 Tr. 4), was a result of his confusion as to the meaning of the word "participate." In connection with that contention by Abrams, Judge Thomas concluded: "The record further indicates that the basis of [petitioner's] plea of guilty was that he did in fact participate in the robbery" (Judge Thomas' post-conviction opinion, filed Oct. 1, 1969, p. 6), and that the trial judge acted correctly in accepting the guilty plea in light of such a statement by petitioner at the time of his plea.

In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1971), the Supreme Court considered whether a plea of guilty could be accepted by the trial court when the defendant maintained his innocence of the crime charged and entered a guilty plea to avoid the possibility of a death sentence. Mr. Justice White, writing for the Court, noted (at 37–38, 91 S.Ct. at 167–168):

> Nor can we perceive any material difference between a plea which refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the

State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, see McCarthy v. United States, supra, 394 U.S. 459 at 466–467, 89 S.Ct. 1166, 22 L.Ed.2d 418, at 425 (1969), its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it. [Footnotes omitted.]

Abrams, as did Alford, obviously considered a plea of guilty to be to his advantage. As in *Alford,* the State had a "strong case" against Abrams. At the November 21, 1968 hearing before Judge Sklar, the State's Attorney stated, *inter alia,* that Abrams was driving the car in which his two co-defendants were riding and that:

> * * * The officers found on the floor of the car numerous rolls of money which resembled the rolls of money, coins, which had been taken from the restaurant. There had been a total of three hundred and seventy dollars in cash taken from the restaurant and two checks were made out to Chicken Delight. When the defendants were booked at the Station a full search of their person and their car revealed a

total of more than three hundred and seventeen dollars in cash and the two checks were also in the car. Also found in the car was a gunbox, and upon investigation back at the scene the Police found across the street from the restaurant a gun which had a serial number matching the gunbox which had been found on the floor of the car in which the defendants were all arrested.

THE COURT: You say a gunbox was found in the automobile?

MR. OZER: Yes sir.

THE COURT: Where was the gun or pistol found?

MR. OZER: The pistol itself was found in front of 4249 Harford Road, which is just across I think an alleyway from the restaurant. The serial number of that gun matched the serial number on the gunbox which had been found in the automobile.

That would be the statement of facts in this case, your Honor.

(11/21/68 Tr. 10–11). At the February 13, 1969 hearing, Abrams, on cross-examination by the State's Attorney, testified (Tr. 58–59):

BY MR. OZER:

Q You mean you thought you were an accomplice because you drove the two boys away in your car?

A Yes.

Q And because you were there when it happened?

A Yes.

Q And that is the only reason you thought that you participated?

A No.

Q What other reasons?

A Well the robbery, the weapon used in the robbery was a pistol belonging to me.

Q And so you thought that the reason you had participated because the pistol belonging to you had been used in the robbery, because you were present when the robbery was committed and because you drove the boys away in your car, is that why you thought you participated?

A That's what I meant by participation.

Q And did you think of any other reasons?

A Well, there was no premeditation to rob anyone.

Q Answer my question, do you think there was any other reasons why you participated?

A No.

Q Did you at that time when you answered the question of participation realize that you had given the boys the gun, it was your gun, and you had given it to them right before the robbery?

A I didn't give it to them. I loaned it to them.

Q Right before the robbery?

A No.

Q When had you loaned it to them?

A About a half an hour before.

Q So it was your gun you had loaned to them a half an hour before the robbery, you were there when the robbery was committed and you drove them away in your car and that is what you meant by participation, is that right?

A Yes, it is.

Q That's all I have, Your Honor.

Thus, the State's Attorney presented to Judge Sklar the substance of the case against Abrams as an alleged principal in the robbery. Although Abrams may, in fact, have been guilty only as an accessory [2]—or, indeed, not guilty at all—

---

2. In Sanders v. State, 1 Md.App. 630, 646, 232 A.2d 555, 564 (1967), the Court of Appeals of Maryland wrote: * * * Not being actually or constructively present at the commission of the crime, a person's participation by way of procurement, command and counsel constitutes him an accessory before the fact and if a person receives, comforts or assists a felon, knowing

Judge Sklar was justified under the standards enunciated in *Alford* in accepting Abrams' plea of guilty. Therefore, this Court, after an examination of the whole record in this case, accepts the determination by Judge Thomas that Abrams pled guilty because he had, in fact, taken part in the robbery.

■ Insofar as petitioner's fifth contention is concerned, Judge Sklar, upon receiving petitioner's written claim of innocence, did schedule and hold a full hearing as to the voluntariness and knowledgeability of petitioner's plea of guilty. His guilty plea had been accepted on November 21, 1968, and the communication was received by Judge Sklar about one week later. Petitioner was sentenced on January 14, 1969, and the hearing on the voluntariness of the guilty plea was held on February 3, 1969. The fact that the trial court sentenced petitioner before holding the above-mentioned hearing did not prejudice the petitioner in any way or deny him any of his rights. " 'There is no absolute right to withdraw a guilty plea before the imposition of sentence, but the right to do so is within the sound discretion of the trial court.' Kirshberger v. United States, 392 F.2d 782, 787 (5th Cir., 1968); United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967). Since the record dem-

onstrates the voluntariness of the plea it cannot be said that the trial judge abused his discretion." Chisholm v. Wainwright, 308 F.Supp. 119, 120 (S.D. Fla.1969), aff'd, 427 F.2d 1138 (5th Cir. 1970).

Rule 722 of the Maryland Rules provides:

> *Change of Plea of Guilty*: The court *may* strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice. [Emphasis added.]

This Court holds that Judge Sklar did not abuse his discretion in refusing Abrams' request to withdraw his guilty plea, and that the interest of justice did not require Judge Sklar so to do. Accordingly Abrams' fifth contention is denied.

■ Petitioner's sixth contention of denial of due process seems to be a general catch-all of the issues discussed above, and is hereby denied. It should be noted that the petitioner, during the November 21, 1968 proceeding at which he entered his guilty plea, did not indicate in any way that he was innocent, and did not state or reveal any dissatisfaction with his plea of guilty. Neither in his letter dated November 28, 1968 nor at any time until after his sentencing did he raise any question concerning his

---

that he has committed a felony, such person is an accessory after the fact.[2]

2. An accessory at common law may be made a principal by statute, as when one aids, counsels or procures another to wilfully and maliciously set fire to a dwelling house. Maryland Code (1967 Replacement Volume) Art. 27, § 6; Wimpling v. State, 171 Md. 362, 189 A. 248. The provisions of Code, Art. 27, § 488, establishing the maximum sentence for the crime of robbery with a deadly weapon, "or accessory thereto", do not make an accessory a principal.

We point out that on an indictment charging a person as a principal in the crime of robbery with a deadly weapon, there can be no conviction on evidence showing that he was only an accessory either before or after the fact. * * *

*See also* Agresti v. State, 2 Md.App. 278, 281, 234 A.2d 284, 286 (1967):

Although at common law an accessory before the fact is liable to the same punishment as the principal, the distinction between them is important in practice unless the distinction has been changed by statute. At common law, an indictment must charge a person correctly as principal or accessory according to the facts and on an indictment charging a person as principal there could be no conviction on evidence showing that he was merely an accessory and vice versa. * * *

Of course, Abrams, under the facts of this case, might have been a "lookout" and as such a principal. Agresti v. State, *supra* at 280, 234 A.2d 284, *citing* Veney v. State, 225 Md. 237, 238, 170 A.2d 171 (1961). By way of contrast, the provisions of 18 U.S.C. § 2 are to be noted.

alleged lack of understanding. Abrams graduated from high school and was attending college at the time of the robbery for which he was convicted (11/21/68 Tr. 16). His educational background, plus a reading of his testimony in the several proceedings in this case, plus his representation by Mr. Allen, who had known Abrams' family for some years (1/14/69 Tr. 18), and who seemingly took a personal interest in the case, support the conclusions of Judges Sklar and Thomas that Abrams understood what he was doing when he pled guilty.

## II.

Counsel for petitioner have urged upon his Court that this case is factually similar to *Holloway v. State*, 8 Md.App. 618, 261 A.2d 811 (1970). In *Holloway*, the trial judge accepted a guilty plea on a charge of unauthorized use of a motorcycle which the defendant, at the hearing during which he tendered his guilty plea, stated that he had found abandoned in a ditch and that he was in the process of taking to the town police when he was arrested by a Maryland state trooper. The conviction was reversed by the Court of Special Appeals of Maryland. But in *Holloway*, the conduct, which the defendant admitted, did not constitute the crime with which he was charged—or indeed, apparently, any crime. In this case, the testimony of Abrams and of Mr. Allen reveals that he gave his gun to his two co-defendants within one-half hour of the time the robbery of a restaurant took place; that Abrams drove his two co-defendants to the restaurant, which they then robbed while he stayed in the car; that Abrams waited in the car while his two co-defendants went into the restaurant; that thereafter, about the time the two co-defendants were returning to the car, Abrams heard someone in the restaurant say that the restaurant had been held up; that Abrams drove his two co-defendants away from the restaurant; and that the gun was thrown out of the car after Abrams started to drive away (2/13/69 Tr. 58–59, 77, 87). The prosecutor stated that the gun was later found across the street from the restaurant and had a serial number matching that on the gun box found in the car (11/21/68 Tr. 10, 11). Mr. Allen testified at the post-sentencing hearing before Judge Sklar that Abrams

always said when the two men ran out he heard someone inside say we have been robbed or we have just been robbed. They got in the car and said let's get away from here. That he realized they had robbed the place and he drove them away from there. But he always said that he is completely innocent. But the facts, the facts as he outlined them amount to, in my opinion, complete guilt of the offense of which he is charged. [2/13/69 Tr. 89–90.]

Earlier (at 2/13/69 Tr. 87), Mr. Sharretts asked the following questions and Mr. Allen replied as follows:

Q Did he ever indicate to you that he didn't feel that he was guilty?

A Yes, he told me he wasn't guilty.

Q Did he tell you why he felt he was not guilty of anything?

A Well I guess he told me why, I guess he told me why when he said he didn't plan the robbery, that is he didn't go there with the intention of committing a robbery. He's often said this to me and I think he's really based it on the fact that he didn't actually pre-plan it, that is the only thing I could see. Because Abrams tells me about giving the gun to the boys. But he claims that that had nothing to do with any robbery that he just loaned them the gun, just like you'd loan a dollar, I suppose.

Mr. Allen also testified that he learned from counsel for one of the other alleged robbers that he "would testify against Abrams and blame the leadership of the crime on Abrams" (2/13/69 Tr. 78).

During the post-conviction hearing, Judge Thomas questioned Abrams and

received the following replies (9/19/69 Tr. 15–17):

THE COURT: Did I understand you to say that you were satisfied to plead guilty if you could get on probation? Is that what you said a minute ago?

A Yes, sir, Your Honor.

THE COURT: Well, then a few days later, after you were found guilty, you wrote Judge Sklar a letter in which you said that you were innocent and not guilty, and you wanted five or ten minutes of the Judge's time to talk to him?

A That's correct. I wanted to explain to him how things happened, and let him take things from there, because I didn't rob anyone. I didn't have any intent to steal anything, and I realized that it had crossed my mind when I was thinking about that, I might not be put on probation, that Mr. Allen was—well, I didn't trust him any more, and I thought he had lied to me. I wanted Judge Sklar to know the facts as everything happened, and that's why I asked him what you see.

THE COURT: Do I understand you correctly now to say that you were satisfied to plead guilty, provided you got probation, and a few days later, you began thinking about it, and thought you might not get probation, and you wrote Judge Sklar a letter asking for a hearing, and wanted to put all of the facts before him? Is that what you are telling me now?

A That's correct.

THE COURT: In other words, I assume by that, if you still harbored the belief that you were going to get probation, you wouldn't have done anything about it? You wouldn't have written Judge Sklar?

A Well, if I was put on probation, I wouldn't have.

THE COURT: You wrote Judge Sklar before you knew you were going to get on probation or not. As a matter of fact the Probation Department recommended probation in this case.

\* \* \*

During the February 13, 1969 post-sentencing hearing, Mr. Sharretts (at Tr. 90) asked Mr. Allen if Abrams had not told him that he asked the two men who committed the robbery to get out of the car. Mr. Allen replied (2/13/69 Tr. 90–91):

A I'm not sure of that, Mr. Sharretts. The first time I actually remember hearing that is in the Judge's Chambers today. I don't remember that.

Q Well do you remember—

A If you got it in the transcript that I said it, I'm sure I said it.

MR. OZER: You didn't say it. It's not in the transcript.

THE WITNESS: I don't remember that.

BY MR. SHARRETTS:

Q But it was said by him at the time of disposition so you must have heard it before?

A I don't remember him ever contending that previously. He contended that after the boys jumped in the car and said let's go and was trying to tell him to speed up and duck down various streets, he contended that he refused to duck down these streets and he also claimed that when the police car came in behind he stopped.

Mr. Allen's testimony (see, e. g., 2/13/69 Tr. 89–90) makes it clear that Abrams steadfastly maintained his innocence, but admitted the facts which constituted the crime. Abrams was the owner of the car who drove the two men who entered the restaurant to the scene of the restaurant, who provided the gun used to commit the robbery, who waited while the other two men went into and came out of the restaurant, and who has stated that he knew he was driving two robbers away from the scene of the robbery. Abrams' self-proclaimed innocence at most constituted a conclusory opinion concerning the law. The circumstances under which Abrams provided his gun to the other two men are not clear (see 2/13/69 Tr. 56), and Mr. Sharretts' suc-

cessful objection to a question (concerning what Abrams had told Mr. Allen about his provision of the gun) blocked clarification in that regard.

Nor does the record directly establish Abrams knew of the robbery before it occurred. But the record does show that he knew of it at about the time the robbers were returning to the car and before he drove it away from the restaurant (2/13/69 Tr. 77).

### III.

In a legal memorandum submitted to this Court, counsel for Abrams contend that Abrams:

> * * * was deceived into entering a guilty plea upon the false representation that if he got a favorable probation report, then the Petitioner would, in fact, be placed on probation. However, he was never advised that the trial Court had a personal policy of *never granting probation* in an armed robbery case and it was the practice of the Supreme Bench of Baltimore City to give not less than eight years to a first offender in an armed robbery case. [Emphasis in original.]

Counsel for petitioner cite Munich v. United States, 337 F.2d 356 (9th Cir. 1964), in which the defendant was not advised, before pleading guilty, that conviction of the statutory offense therein involved rendered him ineligible for probation, and urged herein that Abrams' guilty plea was not entered voluntarily. In *Munich* (at 361), the Court concluded:

> * * * In our opinion one who, at the time of entering a plea of guilty, is not aware of the fact that he will not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea. [Footnote omitted.]

This Court has before it only counsel's assertion of the trial court's alleged policy (1) against probation in an armed robbery case and (2) of imposing eight-year sentences on first offenders in armed robbery cases. Further, the contention that that policy rendered Abrams' plea involuntary has at no time been raised or even mentioned in any state court proceeding.

### IV.

■ Finally, this Court takes note that Abrams' counsel apparently contend both federal constitutional and Maryland standards require that a defendant, before his guilty plea is accepted, must be advised specifically that he is waiving his constitutional rights against self-incrimination, right of trial by jury, and confrontation of accusers. This point also was seemingly not specifically raised by Abrams in the state court proceedings before Judge Sklar and Judge Thomas. Nor do the standards of McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), or any other decision of the Supreme Court of the United States or of the Fourth Circuit, seem constitutionally to require all of that advice, whatever the required or preferred federal court practice is pursuant to Rule 11 of the Federal Rules of Criminal Procedure. *See also* Silverberg v. Warden, 7 Md.App. 657, 662, 256 A.2d 821 (1969). In that connection, this Court notes in Boykin v. Alabama, *supra*, 395 U.S. at 244 n. 7, 89 S.Ct. 1709, 23 L.Ed.2d 274, the following quotation from Commonwealth ex rel. West v. Rundel, 428 Pa. 102, 105–106, 237 A.2d 196, 197–198 (1968):

> A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges,

his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.

But this Court also notes in McCarthy v. United States, *supra*, 394 U.S. at 467 n. 20, 89 S.Ct. at 1171, 22 L.Ed.2d 418, Mr. Chief Justice Warren's adoption of the statement of the Sixth Circuit in Kennedy v. United States, 397 F.2d 16, 17 (6th Cir. 1968), cert. denied, 394 U.S. 1018, 89 S.Ct. 1636, 23 L.Ed.2d 43 (1969), that with regard to inquiries, under Federal Criminal Rule 11, made at the time of tendering guilty pleas, "matters of reality, and not mere ritual, should be controlling." This Court knows of *no* case which holds that a defendant pleading guilty in a state court *must*, in order for federal constitutional standards to be met, be advised of his right against self-incrimination or his right to confrontation. *Boykin* and *Rundel* are authority for the proposition that such a defendant should be advised of his right to a jury trial. *Cf.* Zimmerman v. State, 9 Md.App. 488, 498, 265 A. 2d 764 (1970). But this Court knows of no case holding that the failure of a trial judge to give such advice before accepting the tender of a guilty plea is automatically fatal, particularly if an examination of the record, as a whole, reveals that the defendant acted intelligently and with the advice of counsel. Further, in any event, this Court knows of no federal or Maryland case decided before *Boykin* which can be construed so to require. Abrams' guilty plea was tendered before the Supreme Court of the United States filed its opinion in *Boykin* on June 2, 1969. For the reasons stated by Judge Holloway in Perry v. Crouse, 429 F.2d 1083, 1085 (10th Cir. 1970), and by Judge Orth in Silverberg v. Warden, *supra,* this Court holds *Boykin* not to be retroactive. *See* Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), holding *McCarthy* not retroactive.

### V.

Abrams is advised that if he desires further to pursue the contentions discussed under III and IV, *supra,* he should proceed in the following manner:

1. Petitioner should file a petition for post-conviction relief in the Criminal Court of Baltimore raising therein any and all claims he wishes to have considered.

2. If relief is denied by that Court, petitioner should apply for leave to appeal to the Court of Special Appeals of Maryland within thirty days after such denial.

3. If leave to appeal is denied by that Court, petitioner may then apply for a writ of habeas corpus to this Court.

4. If leave to appeal is granted by the Court of Special Appeals of Maryland, but relief is denied, petitioner should file a petition for certiorari to the Court of Appeals of Maryland.

5. If that Court denies certiorari, or after granting certiorari, denies relief, petitioner may then apply for a writ of habeas corpus in this Court.

By following this procedure, petitioner will have exhausted his available state remedies before applying for a writ of habeas corpus in this Court. Failure to follow the procedure set out above, after this express instruction and warning, may be viewed by this Court as an intentional and knowing relinquishment of any possible right to seek thereafter federal habeas corpus relief on the same ground or on any grounds that could have been raised in the state courts.

It is, therefore, this 25th day of May, 1971, by the United States District Court for the District of Maryland, hereby ordered:

1. Petitioner's petition for habeas corpus relief is hereby denied.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for each of the parties.*

---

* Abrams appealed to the United States Court of Appeals for the Fourth Circuit from the judgment set forth hereinabove. On October 20, 1971, in a Memorandum Decision, that Court affirmed the judgment below for the reasons stated hereinabove in this Memorandum and Order.