## MORTON A. SILVERBERG *v.* WARDEN, MARYLAND PENITENTIARY

[No. 77, September Term, 1969.]

*Decided September 10, 1969.*

Before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morgan L. Amaimo* for applicant.

*Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* for respondent.

ORTH, J., delivered the opinion of the Court.

This is an application for leave to appeal from an order of 18 June 1969 of Judge Albert L. Sklar, presiding in the Criminal Court of Baltimore, denying relief sought under post conviction procedures. The application is denied as to the second and third allegations of error for the reasons stated in the memorandum accompanying the order. The first allegation, that the applicant's plea of guilty was not voluntarily made, requires discussion in the light of *Boykin v. Alabama,* 395 U. S. 238, 89 Sup. Ct. 1709, 23 L.Ed.2d 274 (1969).

*Boykin* asserts that a plea of guilty is more than an admission of conduct; it is, when properly accepted, a conviction; nothing remains but to give judgment and determine punishment. The Court's opinion clearly holds that it is error for a trial judge to accept a guilty plea without an affirmative showing that it was intelligent and voluntary; if the plea is not equally voluntary and intelligent it has been obtained in violation of due process and therefore void. This showing encompasses several factors. For the plea to be intelligent, consideration must be given to the fact that a waiver takes place when the plea is entered. This waiver involves at least three fed-

eral constitutional rights: (1) the privilege against self-incrimination guaranteed by the Fifth Amendment and applicable to the states by reason of the Fourteenth, *Malloy v. Hogan,* 378 U. S. 1; (2) the right to trial by jury, *Duncan v. Louisiana,* 391 U. S. 145; (3) the right to confront one's accusers, *Pointer v. Texas,* 380 U. S. 400. As federal constitutional rights are involved, the question of the waiver of them is governed by federal standards. *Douglas v. Alabama,* 380 U. S. 415, 422. One of the standards is that to be effective the waiver must be "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U. S. 458, 464, and presuming waiver from a silent record is impermissible. The Court said in *Boykin* in regard to the waiver of the three constitutional rights involved in a guilty plea, "We cannot presume a waiver of these three important federal rights from a silent record." Thus the record must show, as in the waiver of right to counsel, that an accused intelligently and understandingly relinquished or abandoned his rights; anything less is not waiver. *Carnley v. Cochran,* 369 U. S. 506, 516. To be voluntary the accused must have a full understanding of what the plea connotes and its consequence; it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. *McCarthy v. United States,* 394 U. S. 459, at 466. The plea cannot flow from "[i]gnorance, incomprehension, coercion, terror, inducements, (or) subtle or blatant threats." *Boykin v. Alabama, supra,* at 242-243. It appears from *Boykin* that the procedure to be followed for the record to disclose whether the plea of guilty is intelligent and voluntary is for the trial judge personally to inquire of the defendant.[1] The Court's opinion states, at 243:

1. Mr. Justice Harlan, joined by Mr. Justice Black, said in his dissenting opinion: "So far as one can make out from the Court's opinion, what is now in effect being held is that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal constitutional due process." 395 U. S. at 247. Fed. Rules Crim. Pro. 11, as amended in 1966, di-

> "What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When *the judge discharges that function, he leaves a record adequate for any review that may be later sought* * * * and forestalls the spinoff of collateral proceedings that seek to probe murky memories." (emphasis added; citations omitted)

*Boykin,* however, did not attempt to establish any general guidelines for the trial court's inquiry. The Court said in *McCarthy v. United States,* 89 S. Ct. 1166 (see note 1 herein) at 1171, note 20: "The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself * * * In all such inquiries 'matters of reality and not mere ritual, should be controlling.' *Kennedy v. United States,* 397 F. 2d 16, 17 (C. A. 6th Cir. 1968)." But while no general guidelines are established, the Court in *Boykin* quoted in note 7 from *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 105-106, 237 A. 2d 196, 197-198 (1967):

> "A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the rec-

---

rects the district judge personally to address a defendant who pleads guilty, inquiring whether he understands the nature of the charge against him and whether he is aware of the consequences of his plea. It also requires that the judge satisfy himself that there is a factual basis for the plea for it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. *McCarthy v. United States,* 89 S. Ct. 1166. The procedure embodied in Rule 11 has not been held to be constitutionally mandated, see *Waddy v. Heer,* 383 F.2d 789, but *McCarthy* rejected the contention that it can be complied with although the district judge did not personally inquire whether the defendant understood the nature of the charge.

ord examination of the defendant which should include, *inter alia,* an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged, and the permissible range of sentences."

And in *McCarthy,* note 20, it said:

"As our discussion of the facts in this particular case suggests, however, where the charge encompasses lesser included offenses, personally addressing the defendant as to his understanding of the essential elements of the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge."

However, even if Mr. Justice Harlan's construction of the *Boykin* opinion—that personal inquiry by a state trial judge of the defendant is required as a matter of federal constitutional due process—is correct, we do not believe that the failure to conduct such inquiry, in itself, vitiates a guilty plea accepted prior to the date of the *Boykin* decision. In *Halliday v. United States,* 89 S. Ct. 1498, in a per curiam opinion, the Court held that *McCarthy* should not be applied to guilty pleas accepted prior to the date of that decision. The Court said that the rule adopted in *McCarthy* had two purposes: (1) to insure that every defendant who pleads guilty is afforded Rule 11's procedural safeguards, which are designed to facilitate the determination of the voluntariness of his plea; (2) to provide a complete record at the time the plea is entered of the factors relevant to this determination, thereby enabling a more expeditious disposition of a postconviction attack on the plea. It pointed out that "a defendant whose plea has been accepted without full compliance with Rule 11 may still resort to appropriate post conviction remedies to attack his plea's voluntariness.

Thus if his plea was accepted prior to our decision in *McCarthy*, he is not without a remedy to correct constitutional defects in his conviction * * * [I]n view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply *McCarthy* retroactively." 89 S. Ct. 1499. We feel that the primary purpose of *Boykin* was to require a complete record at the time a guilty plea is entered of the factors relevant to a determination of whether it was intelligent and voluntary. Unquestionably personal inquiry by the trial judge enhances the reliability of this determination but if the plea was accepted prior to *Boykin,* a defendant is not without a remedy to correct constitutional defects in his conviction. We believe that there have been a large number of constitutionally valid convictions that may have been obtained in this jurisdiction without personal inquiry by the trial court of the defendant and we do not think that *Boykin* should be applied retroactively more than *McCarthy* should be so applied. We hold that *Boykin,* insofar as it may require personal inquiry by the trial judge, should not be applied to guilty pleas accepted prior to the date of that decision, 2 June 1969.

Maryland has long followed the rule that there is reversible error where the record does not disclose that the defendant voluntarily and knowingly entered his guilty plea. *Edwards v. State,* 7 Md. App. 327. The question is whether the record here discloses that the guilty pleas were intelligent and voluntary at the time they were accepted.

There is in the record before us an extract of the proceedings at the original trial. Two indictments against the applicant were called for trial. The transcript reads as follows:

"THE CLERK: All right. Morton A. Silverberg, will you stand, please.

Mr. Kupfer, are you familiar with these two indictments?

MR. KUPFER: (Defense Counsel) Yes, sir.

THE CLERK: And what is the plea?

MR. KUPFER: The plea is guilty as to the first count in each indictment.

THE CLERK: The pleas are guilty, first count in Indictment #1450 and #4339. Thank you.

THE COURT: Well, now, counsel, do you wish to make certain statements for the record in these two cases?

MR. KUPFER: Right. Stand up, Mr. Silverberg. On your behalf I—you plead guilty to the first count of Indictment #1450, which is a count of burglary in reference to a home of Mr. Stanley Scherr, for certain items that were taken out of that, do you understand that?

DEFENDANT: Yes, sir.

MR. KUPFER: And this plea is given voluntarily?

DEFENDANT: Yes, sir.

MR. KUPFER: Right. And in Indictment #4399 there again is a plea of guilty to the first count of burglary to a home in the—Mr. J. Catt, and this was also at that time, was this your plea to that?

DEFENDANT: Yes, sir.

MR. KUPFER: And this again was given voluntarily?

DEFENDANT: Yes, sir.

MR. KUPFER: And there have been no promises or inducements made to you by His Honor, the State's Attorney, in reference to these matters?

DEFENDANT: No, sir.

THE COURT: And are you entering pleas of guilty to each of these indictments?

DEFENDANT: Yes, sir.

THE COURT: Because you are, in fact, guilty?

DEFENDANT: Yes, sir.

THE COURT: Have you been satisfied with the services that have been performed on your behalf by your counsel—

DEFENDANT: Yes, sir.

THE COURT: —in these cases. And these pleas are being entered freely and voluntarily; no one has made you any promises or inducements?

DEFENDANT: Yes, sir.

THE COURT: And you have not been threatened in any way to enter these pleas?

DEFENDANT: Yes, sir.

THE COURT: Is that correct?

DEFENDANT: Yes, sir.

THE COURT: Very well."

The Assistant State's Attorney then gave the court a full statement of the facts of the crimes and offered in evidence a bag of burglary tools, a loaded revolver, and articles stolen, all recovered from an area within the applicant's immediate control at the time of his arrest, and photographs of the premises buglarized. The transcript then reads:

"THE COURT: Mr. Kupfer, have you explained to your client, I assume you did, the consequences of his plea, the possible maximum penalty that I could impose in each one of these cases.

MR. KUPFER: Yes, sir, I have explained it to him.

THE COURT: Very well.

MR. KUPFER: * * * I have explained to Mr. Silverberg the seriousness of this and he has been incarcerated in the Baltimore City Jail since March 5th of last year. Mr. Silverberg, after going through all these matters I have talked to him about it, understands the plea that is given. And, at the same time he realizes that this is a very serious

offense. Thank goodness there was no one that was hurt."

The transcript also discloses that the applicant had pleaded guilty about 15 years before to 23 charges of burglary and received a sentence of one year. Asked by the court if he had anything to say before sentence was imposed the applicant said:

"Well, like my attorney said, I am quite older now, I will be 35 next week, and I know it was foolish, and I am awfully sorry for the trouble that was caused; and, I never meant to hurt nobody, nor would I, and I would like to ask for any consideration you would give me to have a chance to go and do what I am supposed to or what is expected of me. I think it is about time I do it, as I say I am getting older."

The court imposed a 20 year sentence on each conviction to run consecutively. The sentences were subsequently modified to run concurrently.

It is clear that from the statement of facts given and the exhibits admitted that the trial court could be properly satisfied that there was a factual basis for the pleas. We think that the transcript of the proceedings on its face refutes the allegations made by the applicant in his collateral attack on his convictions—that he gave no authority to his attorney to enter the pleas of guilty, that he did not want or intend to plead guilty and that he desired a jury trial. Canvassed by the trial court he himself said he was entering a guilty plea to each indictment because he was in fact guilty, that the pleas were voluntary and that there were no promises, inducements or threats made him. The nature of the charges was explained to him in open court by his attorney and he said he understood. His attorney in response to a question by the court stated that he had explained to the applicant the consequences of his pleas, the penalties which could be imposed and the seriousness of the offenses and stated that the applicant "understands the plea that is given."

The applicant in no way refuted these statements although given the opportunity to do so. Even now the applicant does not allege that his pleas flowed from coercion, terror, inducements or subtle or blatant threats. He claims, in effect, ignorance and incomprehension. But the record dispels these claims. The record is adequate on review for a determination that this 35 year old man, to whom the administration of criminal justice was not unknown, intelligently and voluntarily, as those terms are considered in the making of a guilty plea, pleaded guilty to each burglary with which he was charged. We so find. That he may have been hopeful that he would be treated as lightly as he was on his previous pleas of guilty to twenty-three burglaries did not render his pleas to the current offenses unintelligent or voluntary.

*Application denied.*