# RICHARD ENGLISH *v.* STATE OF MARYLAND

[No. 589, September Term, 1971.]

*Decided  January  2,  1973.*

The cause was argued before ORTH, C. J., and THOMPSON and DAVIDSON, JJ.

*Donald Daneman* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Robert N. Dugan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

An accused in a criminal proceeding has no constitutional right to plead guilty. He may so plead in Maryland

by a rule of procedure, Maryland Rule 720, and when an offense may by law be divided into degrees of guilt, he may plead not guilty to one degree and guilty to another degree, Rule 724. However, the trial court may refuse to accept a plea of guilty, Rule 721, and it may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice, Rule 722. Thus the court has broad discretion to refuse to accept a plea of guilty tendered and to strike out a plea of guilty entered. *Taylor v. State,* 7 Md. App. 558. The accused, cloaked in the presumption of innocence and protected by the full panoply of his constitutional rights, then stands trial upon a plea of not guilty before the trier of fact and law, be it a jury of his peers, or, by his election, the bench, to be convicted only upon the State meeting its burden of proving the *corpus delicti* and his criminal agency beyond a reasonable doubt.

The court does not have the same general discretion to accept a plea of guilty as it has to refuse to accept it. A plea of guilty can be effectively accepted by a court only under the standard applicable to waiver of constitutional rights. *Williams v. State,* 10 Md. App. 570, 571. The opinions of this Court, construing and interpreting the dictates of the Supreme Court of the United States, spell out what satisfies this standard. We summarized the holdings in *Williams,* at 571-572:

"[T]he record must affirmatively show that the plea of guilty was entered by an accused:
(1) voluntarily, that is not through coercion, terror, inducements, or subtle or blatant threats; and
(2) with an intelligent understanding, that is not through ignorance or incomprehension:
  (a) of the nature of the offense to which he is pleading guilty; and
  (b) of the possible consequences of such a plea; and
(3) unconditionally, that is without any condition or qualification."

442

It was pointed out in *Boykin v. Alabama,* 395 U. S. 238, 243: "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. * * * Second, is the right to trial by jury. * * * Third, is the right to confront one's accusers. * * *." (citations omitted). It is now firmly established that for a plea of guilty to be effectively accepted on or after 2 June 1968, see *Silverberg v. Warden,* 7 Md. App. 657, the satisfaction of the standard includes an affirmative showing in the record that the accused understood and waived these three rights. *McCall v. State,* 9 Md. App. 191. The record must also clearly show that the accused knew the length of the maximum sentence authorized to be imposed upon conviction of the offense to which he is pleading. *Gant v. State,* 16 Md. App. 382; *Mathews v. State,* 15 Md. App. 686. But, informing the accused that he may be referred to the Patuxent Institution for evaluation of possible defective delinquency is not a requisite to satisfaction of the standard. *Smith v. Director,* 13 Md. App. 53. Further, the plea may be effectively accepted even though the accused denies his guilt, "provided the State demonstrates a strong factual basis for the plea and [the accused] clearly expresses a desire to enter it despite his professed belief in his innocence." *Williams v. State, supra,* at 574.[1]

It is a truism that ordinarily an accused tenders a plea of guilty in expectation of some benefit—a less harsh sentence, the abandonment of more serious or additional charges, the avoidance of the travails of a trial.

---

1. We explained: "In such circumstances the assertion of innocence does not necessarily negative any admission of guilt, which is normally central to a plea of guilty and the foundation of entering judgment. Basically the 'standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" 10 Md. App. at 574, quoting *North Carolina v. Alford,* 400 U. S. 25.

Frequently, however, standing convicted and sentenced, he has second thoughts in the cold light of post sentence reality. His former willingness, and even eagerness, to plead his guilt judicially no longer seems felicitous. His plea of guilty and its acceptance does not preclude an appeal directly attacking the judgment entered.[2] *Duvall v. State,* 5 Md. App. 484, 486. Although a plea of guilty, effectively accepted, waives all procedural objections, constitutional or otherwise, and all non-jurisdictional defects, *Waller v. State,* 13 Md. App. 615, the propriety of the acceptance of the plea, that is whether the constitutional standard has been satisfied, is subject to appellate review. As constitutional rights are involved, we must make an independent constitutional appraisal of the entire record to determine if the plea was full, free, and fair within the contemplation of the standard. See *Gardner v. State,* 10 Md. App. 233, 245. If the record does not show clearly that it was, the judgment must be reversed. *Silverberg v. Warden, supra,* at 662. See *Gant v. State, supra; Smith v. Director, supra; Bailey v. State,* 12 Md. App. 397; *Holloway v. State,* 8 Md. App. 618.

On 30 March 1971 in the Criminal Court of Baltimore RICHARD ENGLISH pleaded guilty to the 1st count of indictment 123/1971 presenting that on 28 November 1970 he unlawfully distributed heroin. His plea was accepted and he was sentenced to 5 years. He appealed and claimed that the plea was not "freely, voluntarily and intelligently" made. The case came before us. The record disclosed that both the court and defense counsel made extensive inquiry of English to determine the voluntary nature of his plea. Their inquiry was comprehensive except for the right against compulsory self-in-

---

2. The procedure is that the accused pleads guilty, the court, upon being satisfied that the standard for effective acceptance is met, accepts it, a verdict of guilty is rendered by the court, and sentence is imposed.

We have held that Rule 719 b 6 (Counsel—Extent of Duty) must be interpreted to require court-appointed counsel to advise an accused who has pleaded guilty of his right to appeal. *Lucas v. Warden,* 10 Md. App. 359, 361. See *Rhodes v. Warden,* 7 Md. App. 423.

crimination. The record simply did not show, explicitly or implicitly, that he intelligently understood and waived that right.

In the light of the affirmative showing on the record of English's understanding of all the other constitutional rights required to be waived and his intelligent and voluntary waiving of them, and considering that it was patent on the record that English otherwise "freely, voluntarily and intelligently" pleaded guilty and expressed a strong desire to do so, we were inclined to believe that the failure to show that he understood he need not incriminate himself was mere inadvertance. We felt that the purposes of justice would be advanced by permitting further proceedings in the cause to determine whether trial counsel did in fact sufficiently advise English of his constitutional right against self-incrimination and that English intelligently and voluntarily waived the right. We therefore remanded the case without entering a final order affirming, reversing or modifying the judgment from which the appeal was taken with direction to the lower court to conduct such proceedings and make a finding thereon. *English v. State,* No. 589, September Term, 1971, per curiam, unreported, filed 3 April 1972.

Amendment V to the Constitution of the United States reads in part here relevant: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." Case law has made this guarantee applicable to a variety of situations, but we are concerned with it here only in the frame of reference of the voluntariness of a plea of guilty.

Generally speaking, a plea of guilty is "a confession which admits that the accused did various acts." [3] *Boykin v. Alabama, supra,* at 242. However, in *North Carolina v. Alford,* 400 U. S. 25, the Court, recognizing that "most pleas of guilty consist of both a waiver of trial and an

---

3. It is, of course, not merely a confession or admission of conduct. *Boykin* makes clear that "it is itself a conviction; nothing remains but to give judgment and determine punishment. * * * For, as we have said, a plea of guilty is more than admission of conduct; it is a conviction." 395 U. S. at 242.

express admission of guilt," held that the admission of guilt was "not a constitutional requisite to the imposition of criminal penalty." At 37. It explained: "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Idem.*[4] As an admission of guilt is not a constitutional requisite to the imposition of criminal penalty resulting from a plea of guilty, the constitutional guarantee against self-incrimination has no application to any judicial confession or admission aspect of the plea. In other words, with respect to an effective acceptance of a plea of guilty, in the frame of reference of that plea being ordinarily a confession or admission of conduct, whether or not an accused freely and intelligently waived the right against self-incrimination is not pertinent, germane or material. This is so in the light of the holding that any admission of guilt by such a plea is not a constitutional requisite to the imposition of criminal penalty. We observe that it is in any event required that the record show a factual basis for the plea whether or not the accused admits or accepts that factual basis. *McCall v. State, supra,* as modified by *Williams v. State, supra.*

There is an aspect of the guarantee against compulsory self-incrimination inherent in a plea of guilty. The plea of guilty includes a waiver of trial. *North Carolina v. Alford, supra,* at 37. At a trial the accused has the right to testify in his own behalf. This is a statutory right in this jurisdiction. Code, Art. 35, § 4.[5] Although

---

4. The Court observed that it could not "perceive any material difference between a plea that refuses to admit commission of the criminal act [a plea of nolo contendere] and a plea containing a protestation of innocence [as in the case before it] when * * * a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contained strong evidence of actual guilt." *Idem.*

5. The section, as amended by ch. 181 Acts 1972, provides:
"In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes and offenses, and in all proceedings in the nature of criminal proceedings in any court of this State,

he is a competent witness, he is not a compellable witness under the statute, nor could he be, for to make him so would violate the guarantee against self-incrimination. Thus, the constitutional right against compulsory self-incrimination adheres to the accused tendering a plea of guilty with respect to his right not to testify at the trial which the plea waives. We believe that it is in this context that *Boykin* refers to the privilege against self-incrimination guaranteed by the Fifth Amendment as involved in a waiver that takes place when a plea of guilty is offered in a state criminal trial. 395 U. S. at 243. The Fifth Amendment privilege against self-incrimination means "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence." *Malloy v. Hogan,* 378 U. S. 1, 8. Therefore, in order for an accused to waive the privilege against self-incrimination as it applies to his trial on a criminal charge he must understand that he has the right not to testify and that no unfavorable inference may arise from his not testifying. Unless the record affirmatively shows that he understood this privilege and waived it in the constitutional sense, acceptance of his plea of guilty is not effective.

At the time English was convicted upon acceptance of his plea of guilty, the record showed that he was told that he could take the witness stand and testify in his own behalf at the trial, but he was never informed that he would have the right to remain silent. On our review we were unable to conclude that because English understood he had a right to take the stand and testify at a trial, he also understood that he had the right not to take the stand with no unfavorable inference arising there-

---

and before an officer acting judicially, the person so charged shall at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him."

The amendment merely deleted reference to "a justice of the peace."

from. The proceedings on remand did not correct the deficiency.

The evidence adduced at the remand hearing consisted only of the testimony of English. The transcript of the examination by his counsel reads in relevant part:

"Q. Mr. English, prior to your entering a plea of guilty I reviewed with you all of your constitutional rights. Do you recall that?

A. Yes, I think so. I can't be for sure.

Q. And I told you you had a right to remain silent. Do you recall that?

A. Yes.

Q. Told you you didn't have to testify if you didn't want to. Recall that?

A. Yes.

Q. And I told you if you didn't take the stand no inferences will be drawn from your refusal to take the stand. I meant the Judge would not hold it against you if you didn't take the stand. Is that correct?

A. I'm not for sure.

Q. You are not for sure? You had pleaded guilty in the past in other cases?

A. Yes.

Q. And you were advised in those cases you didn't have to take the stand and testify in your own behalf, were you not?

A. In the other cases, my lawyers told me stay on the bench and not testify and went and talked to the Judge.

Q. You didn't testify in that case?

A. No.

Q. I told you in this case no inference would be drawn from your refusal to testify, did I not?

A. I don't know.

Q. Don't recall my telling you that?

A. I can't recall everything you told me."

On inquiry by the court it was only elicited that English

had been told and understood that he could not be forced to plead guilty. This leaves the record unclear as to whether English was told that he would suffer no penalty for not testifying at a trial and there is nothing in the record affirmatively showing that he understood that no unfavorable inferences could be drawn from his election not to testify. We find on our independent constitutional appraisal that there was no effective waiver of the privilege against self-incrimination clearly shown in the record.

The judgment is reversed.[6]

*Judgment reversed; case remanded for a new trial. Mandate to issue forthwith.*

---

6. It appears from the transcript of the original proceedings and the hearing on remand that upon conviction of the offense, which is the subject of his appeal, other indictments returned against English were placed on the stet docket. Rule 718. The transcript reads:

"MR. DUGAN [Assistant State's Attorney]: The State would also move to place on the stet docket, the remaining cases against Richard English, 122 and 124, if that is acceptable.

MR. DANEMAN [Defense Counsel]: Yes, I have explained to my client earlier the State may place the cases on the stet docket, the inactive docket. They are not going to try the cases, but if at some time in the future they want to try it, they have a right to try it. But, they are placing them on the stet docket. Do you understand?

MR. ENGLISH: Yes.

MR. DANEMAN: Are you willing to accept this?

MR. ENGLISH: Yes."

It also appears from the record that a *nolle prosequi* was entered as to indictments outstanding against several members of English's family including his mother. Rule 711.