## LLOYD FRANKLIN DAVIS *v.* STATE OF MARYLAND

[No. 916, September Term, 1974.]

*Decided September 8, 1975.*

The cause was argued before GILBERT, MOORE and MASON, JJ.

*Dennis M. Henderson, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence*

*W. Sharp, Assistant Attorney General, Lawrence V. Kelly, State's Attorney for Allegany County,* and *Michael R. Burkey, Assistant State's Attorney for Allegany County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court. GILBERT, J., dissents and filed a dissenting opinion at page 60 *infra.*

The issues before us on this appeal are whether appellant who pled guilty to three counts of burglary was properly apprised, when he entered his pleas, of his constitutional privilege against self-incrimination; and whether, with respect to two of the counts, there was a factual basis for the pleas.

Appellant, Lloyd Franklin Davis, was charged by a criminal information on March 6, 1974 with nine counts of burglary. At his arraignment on March 14, 1974, he entered a plea of not guilty and prayed a jury trial. On April 22, 1974, when the case was called for trial in the Circuit Court for Allegany County before The Honorable Harold E. Naughton, appellant's counsel informed the court that Mr. Davis desired to enter pleas of guilty to the first, sixth and ninth counts of the information. The State thereupon announced that if the pleas were accepted, it would stet the remaining counts. The trial judge then addressed the following questions to the appellant:

"BY THE COURT: Stand please, Mr. Davis. Mr. Davis, in order to make certain that you are entering your pleas of guilty to these three counts willingly, freely, knowingly and with some degree of intelligence, it is necessary that I ask you a few questions and determine that fact.

Now would you please state your full name?

MR. DAVIS: Lloyd Franklin Davis, Jr.

BY THE COURT: Are you able to hear my questions?

MR. DAVIS: Yes sir.

BY THE COURT: And are you now under the

influence of any alcohol, drugs, narcotics or pills of any kind?

MR. DAVIS: No sir.

BY THE COURT: Are you represented by an attorney in this case, and if so is he present with you at this time?

MR. DAVIS: Yes sir.

BY THE COURT: And what is his name?

MR. DAVIS: Mr. Robb.

BY THE COURT: Now have you been furnished with a copy of the information filed in this case?

MR. DAVIS: Yes sir.

BY THE COURT: And have you read the information and discussed it with your attorney?

MR. DAVIS: Yes sir.

BY THE COURT: Do you fully understand the three charges to which you have entered pleas of guilty?

MR. DAVIS: Yes sir.

BY THE COURT: Now the charges that you've entered pleas of guilty to are burglary, three counts of burglary, each being a felony for which this Court could give you twenty years in prison on each charge, or a total of sixty years. Do you understand that, Mr. Davis?

MR. DAVIS: Yes sir.

BY THE COURT: Now has anyone promised you that I would go easy on you if you entered pleas of guilty?

MR. DAVIS: No sir.

BY THE COURT: Any promises or threats been made to induce you to plead guilty?

MR. DAVIS: No sir.

BY THE COURT: You understand that if you plead not guilty that at the trial the State would have to produce witnesses against you in open

Court, and that you would have the right through your attorney to cross-examine all of them?

MR. DAVIS: Yes sir."

The next question asked by the court pertained to appellant's privilege against self-incrimination:

"BY THE COURT: Do you also understand if you plead not guilty you would not have to take the witness stand in your own defense unless you desired to do so, and if you did not take the stand the prosecuting attorney may not comment or make reference to your failure to testify?

MR. DAVIS: Yes sir.

BY THE COURT: Do you understand that? Do you also understand that if you plead not guilty that you have the right to trial by a Jury or by the Court without a Jury, the choice would be yours? At the trial you would be presumed innocent until proved guilty beyond a reasonable doubt.

MR. DAVIS: Yes sir.

BY THE COURT: Now I have recited to you certain constitutional rights which you have as a defendant in a criminal case. Do you understand that by pleading guilty you are in fact waiving these rights?

MR. DAVIS: Yes sir."

The State was then requested by the court to give its "version of these three cases" and responded as follows:

"MR. KELLY: May it please the Court, the facts in these cases would be that on the 11th day of February, 1974, Lieutenant Kenneth Morrissey of the Cumberland Police Department received a tip that the home of Carl Pete Robb, located at 716 Winifred Road, Cumberland, Maryland, would be broken and entered that evening.

Lieutenant Morrissey in company with Corporal McGowan and other State and City of Cumberland

policemen went to the residence. They staked the place out, being inside of the premises in the evening hours at approximately 8:30 or around 8:00 o'clock, during the dark hours of the day. The police officers did observe an individual, who they would recognize as the Defendant in this case, Mr. Lloyd Franklin Davis, pop the sliding glass door as an entrance to the place, came into the premises, was arrested on the premises in company with two other individuals.

After being taken into custody, Mr. Davis was questioned by William F. Baker of the State's Attorney's Office, after having been fully advised of his constitutional warning. Mr. Davis did give a statement indicating his guilt both in the Pete Robb home which I have described and in two other premises, one being the home of Charles Steiner located at 625 Niagara Street, which was burglarized on the 29th day of January, 1974, and also the home of Jack Carter located 1045 Bishop Walsh Drive in the City of Cumberland, which burglary occured on the 6th of February. As I've indicated, Mr. Davis indicated both in an original statement given on Monday, February 11th, 1974, to Mr. Baker, and in a supplemental statement dated February 12th, Tuesday, February 12th, 1974. He indicated he was involved with the co-defendants; that he had broken these homes that he has plead guilty to in addition to other homes in the area during this period of time.

I might indicate to the Court that with regard to the Carter home it was property of the total value of . . . .

BY THE COURT: He's not pleading guilty to that is he?

MR. KELLY: I believed he was.

BY THE COURT: Yes, he is. That's the sixth count.

MR. KELLY: Yes sir. With regard to the Carter property, Your Honor, the total value of the property removed from that home, which was broken during the dark hours of the day, was $890.00. Approximately $756.00 worth of that property has been recovered, leaving a total unaccounted for of $134.00. In addition, there was $75.00 damage to a door that was broken. With regard to the home of John W. Steiner, the total value of the property removed from those premises during the burglary that occurred on the 29th of January, '74, was $680.50. $100.00 of that property, that is a single diamond ring, has been recovered, leaving a total unaccounted for property loss of $580.50. And in addition there was $80.00 damage to the basement door. With regard to the Carl Pete Robb home, there was no property stolen inasmuch as the defendants were apprehended on the premises. However, there was $50.00 damage to a bedroom wall. There was no property, as I've indicated, taken from this premises."

After hearing the above statement of the facts and ascertaining that appellant agreed with the statement, the court accepted appellant's pleas of guilty. On April 24, 1974, the court imposed three consecutive five-year sentences.

## I

The principal constitutional question raised by appellant, based upon our decision in *English v. State*, 16 Md. App. 439, 298 A. 2d 464 (1973), *cert. granted*, 268 Md. 748, dismissed July 3, 1973, is that prior to the acceptance of his guilty pleas he was not informed by Judge Naughton that if he elected to stand trial and did not take the witness stand no inference of guilt could be drawn from his failure to testify.

In *English v. State, supra,* we quoted from *Malloy v. Hogan*, 378 U. S. 1, 8 (1964) that the meaning of the privilege is "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to

suffer no penalty * * * for such silence." We then stated as follows:

"Therefore, in order for an accused to waive the privilege against self-incrimination as it applies to his trial on a criminal charge he must understand that he has the right not to testify and that no unfavorable inference may arise from his not testifying. Unless the record affirmatively shows that he understood this privilege and waived it in the constitutional sense, acceptance of his plea of guilty is not effective."

First we observe that our decisions in *English* and in *Williams v. State,* 10 Md. App. 570, 271 A. 2d 777 (1970), and *Silverberg v. Warden,* 7 Md. App. 657, 256 A. 2d 821 (1969) placed Maryland in the minority of jurisdictions which adhere to the view that the decision of the Supreme Court of the United States in *Boykin v. Alabama,* 395 U. S. 238 (1969) requires some articulation to the defendant that a guilty plea constitutes a waiver of the Fifth Amendment right against self-incrimination and the Sixth Amendment rights to a jury trial and to confront one's accusers. Indeed, the United States Courts of Appeals which have addressed this issue are unanimous that under *Boykin* specific questions about the waiver of these rights are not required.[1]

Supporting the Maryland position, however, is the leading California case of *In re Tahl,* 1 Cal. 3d 122, 132-33, 81 Cal. Rptr. 577, 460 P. 2d 449 (1969), *cert. denied,* 398 U. S. 911 (1970) where the Supreme Court of California in an opinion by Justice Mosk interpreted *Boykin* to require:

"That each of the three rights mentioned — self-incrimination, confrontation and jury trial — must be specifically and expressly enumerated for

---

1. *See,* Wade v. Coiner, 468 F. 2d 1059, 1061 (4th Cir. 1972); United States v. Frontero, 452 F. 2d 406, 415 (5th Cir. 1971); McChesney v. Henderson, 482 F. 2d 1101 (1973); Todd v. Lockhart, 490 F. 2d 626, 628 n. 1 (8th Cir. 1974); Wilkins v. Erickson, 505 F. 2d 761 (9th Cir. 1974); Stinson v. Turner, 473 F. 2d 913, 915-16 (10th Cir. 1973). The Court of Appeals for the 2nd Circuit in United States ex rel Hill v. Ternullo, 510 F. 2d 844, 845 (1975) stated that the constitutional issue had not there been presented and we "postpone for the present . . . a decision on this question."

the benefit of and waived by the accused prior to acceptance of his guilty plea."

*See also, People v. Jaworski,* 194 N W.2d 868 (Mich. 1972) where the Supreme Court of Michigan held that "the record must show that the defendant has been informed of each and all of the three constitutional rights he waives on pleading guilty;" [2] and *see, Williams v. State,* 325 N.E.2d 827 (Ind. 1975); *State, ex rel Jackson v. Henderson,* 255 So. 2d 85 (La. 1971); *State v. Darling,* 506 P. 2d 1042 (Ariz. 1973), *but see, State v. Carmen,* 506 P. 2d 668 (Ariz. Ct. of App. 1973).

Even where, as in Maryland, articulation of the three constitutional rights is mandated, there is no prescribed ritual binding upon trial courts with respect to the statement of these constitutional rights.[3] The Supreme Court of Michigan in the case of *People v. Butler,* 195 N.W.2d 268 (1972) relied upon the rule of substantial compliance and stated that logically the question might be approached in two different ways:

"First, 'you must advise the defendant of

---

**2.** The weight of authority in State courts is, however, to the contrary. *See,* Edwards v. State, 186 N.W.2d 193 (Wis. 1971); State v. Turner, 183 N.W.2d 763 (Nebr. 1971) and *see* numerous cases cited in the concurring opinion of Justice Summers of the Supreme Court of Louisiana in the State v. Johnson, 257 So. 2d 654 (1972). In addition, the South Dakota Supreme Court appears to have retreated from its statement in Nachtigall v. Erickson, 178 N.W.2d 198 (1970) that "it is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin* — self-incrimination, confrontation and jury trial — and an understanding of the nature and consequences of the plea." In Merrill v. State, 206 N.W.2d 828 (1973) the same court stated that there is "a growing body of authority for the proposition that *Boykin* does not require the record to show an express enumeration by the court, nor an express waiver by the defendant of the constitutional rights mentioned in *Boykin.* . . ." Furthermore, the court said, referring to this "growing body of authority," "[w]e find this latter interpretation of *Boykin* to be persuasive."

**3.** The Supreme Court of California likewise pointed this out in In re Tahl, *supra,* 81 Cal. Rptr. at 584:

"This does not require the *recitation of a formula by rote or the spelling out of every detail* by the trial court. It does mean that the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (Emphasis added.)

*substantially all of his rights,'* or second, *'you must substantially advise* defendant of all of his rights.' "

\* \* \*     .

"The cases hold that a defendant must be substantially advised of each of his rights."

In the instant appeal, the appellant was advised by the court accepting his plea that (a) he would not have to take the witness stand unless he desired to do so and (b) if he did not take the stand "the prosecuting attorney may not comment or make reference to your failure to testify." In addition, he was told that at a trial he would be presumed innocent until proven guilty beyond a reasonable doubt. The substantial effect of these latter statements was, we think, the fair equivalent of advice to the appellant that no inference as to his guilt could be made on the basis of his failure to testify. In other words, we consider that substantial compliance with the requirements of *Boykin,* as previously interpreted by this Court, was achieved. We do consider it preferable that the trial judge inform the defendant not only that his failure to testify may not be used as a basis for comment against him but also that it may not be used as an inference to be weighed on the issue of guilt.[4] Failure to do so, however, does not constitute reversible error where, as here, the constitutional privilege against self-incrimination has been adequately identified and verbalized in non-technical language.

## II

Appellant concedes a "strong factual basis" for the guilty plea to count six which alleged nighttime burglary of the dwelling of Jack Carter at 1045 Bishop Walsh Drive, Cumberland, Maryland, in violation of Art. 27, § 30 (a). He

---

**4.** *See,* American Bar Association Project on Standards for Criminal Justice, Standards Relating to The Function of the Trial Judge, § 4.2, approved draft 1972; and Report and Recommendations, Joint Committees of Maryland Judicial Conference and Maryland State Bar Association to implement the American Bar Association Standards for Criminal Justice, "Pleas of Guilty" approved by the Maryland Judicial Conference, April 1974.

contends, however, that there is no such support for counts one and nine alleging the same offense with respect to the dwellings of Charles Steiner located at 625 Niagara Street, Cumberland, Maryland, on January 29, 1974 (count one) and of the dwelling of Carl Pete Robb located at 716 Winifred Road, Cumberland, Maryland, on February 11, 1974 (count nine).

Article 27, § 30 (a) entitled "Breaking dwelling with intent to steal or commit felony" provides:

"(a) Every person, his aiders, abettors and counsellors, who shall break and enter any dwelling house in the nighttime with intent to steal, take or carry away the personal goods of another of any value therefrom shall be deemed a felon, and shall be guilty of the crime of burglary."

From the factual statement related to Judge Naughton by the Assistant State's Attorney, heretofore quoted in full, it is abundantly clear that appellant was literally "caught in the act" of burglarizing the home of Mr. Robb in the nighttime as a result of a "tip" which had been received by Lieutenant Kenneth Morrisey of the Cumberland Police Department. Appellant argues that no property was taken and also that the record is silent as to whether there was any personal property on the premises. The State, in its explanation of the facts to the court, made the following statement with respect to the Robb home:

"With regard to the Carl Pete Robb home, there was no property stolen inasmuch as the defendants were apprehended on the premises. However, there was $50.00 damage to a bedroom wall. There was no property, as I've indicated taken from this premises."

The clear implication of the above is, of course, there was personal property on the premises and that the presence of the police on the scene precluded its being stolen.

It is also clear that the factual basis for count one was provided by the appellant's inculpatory statements to the

police after his apprehension at the home of Mr. Robb and the police verification of the burglary. It is true that count one identifies the dwelling as that of Charles Steiner and that, in describing the damage to the premises entered and the description of the value of the property stolen, the Assistant State's Attorney identified the dwelling involved in count one as "the home of John W. Steiner" (not Charles Steiner). Earlier, however, the State had disclosed to the court that when appellant was apprehended he made an inculpatory statement "indicating his guilt both in the Pete Robb home which I have described and in two other premises, one being the home of *Charles Steiner* located at 625 Niagara Street which was burglarized on the 29th day of January, 1974. . . ." (Emphasis added.) It is patent that the subsequent reference to the home of "John W. Steiner" was simply an inadvertence; and, in any case, a misidentification of the owner of burglarized premises would not affect the factual basis for a guilty plea to the crime of burglary.

*Judgments affirmed.*

*Gilbert, J., dissenting:*

I adopt the words of Mr. Justice Holmes in *Northern Sec. Co. v. United States*, 193 U. S. 197, 400, 24 S. Ct. 436, 468, 48 L. Ed. 679, 726 (1904), that:

> ". . . [A]lthough I think it useless and undesirable, as a rule, to express dissent, I feel bound to do so in this case and to give my reasons for it."

This Court, speaking through Chief Judge Orth in *English v. State*, 16 Md. App. 439, 298 A. 2d 464 (1973), *cert. granted* 268 Md. 748, *dismissed* July 3, 1973,[1] after quoting from our summary in *Williams v. State*, 10 Md. App. 570, 571-72, 271 A. 2d 777, 778 (1970), analyzing *Boykin v. Alabama*, 395·U. S.

---

1. The appeal was apparently dismissed because it had been improvidently granted.

238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969), went on to point out at 445-46 that:

> ". . . [T]he accused has the right to testify in his own behalf. This is a statutory right in this jurisdiction. Code, Art. 35, § 4. Although he is a competent witness, he is not a compellable witness under the statute, nor could he be, for to make him so would violate the guarantee against self-incrimination. Thus, the constitutional right against compulsory self-incrimination adheres to the accused tendering a plea of guilty with respect to his right not to testify at the trial which the plea waives. We believe that it is in this context that *Boykin* refers to the privilege against self-incrimination guaranteed by the Fifth Amendment as involved in a waiver that takes place when a plea of guilty is offered in a state criminal trial. 395 U. S. at 243. The Fifth Amendment privilege against self-incrimination means 'the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence.' *Malloy v. Hogan,* 378 U. S. 1, 8. *Therefore, in order for an accused to waive the privilege against self-incrimination as it applies to his trial on a criminal charge he must understand that he has the right not to testify and that no unfavorable inference may arise from his not testifying. Unless the record affirmatively shows that he understood this privilege and waived it in the constitutional sense, acceptance of his plea of guilty is not effective.*"(Emphasis supplied). (Footnote omitted).

In the instant case the majority injects into the Maryland law relative to guilty pleas, a doctrine not heretofore followed in this State, insofar as such pleas are concerned. They style their newly discovered panacea, "substantial compliance". To underpin the invoking of the "substantial compliance" doctrine, the majority rely upon the trial

judge's 1) informing the accused that the accused did not have to take the witness stand unless he desired to do so, and 2) that if he did not choose to take the stand, "the prosecuting attorney ... [could] not comment or make reference to ... [the accused's] failure to testify." Seemingly conceding, but not articulating that those two reasons either individually or jointly fail to amount to "substantial compliance", the majority seize upon the trial judge's advising the accused that the accused was presumed innocent until proven guilty beyond a reasonable doubt. The majority then add the three reasons together and conclude that, in the aggregate, there has been "substantial compliance". As a caveat to the holding, trial judges are admonished that it is "preferable" that the defendant be informed that his failure to testify "may not be used as an inference to be weighed on the issue of guilt."

It seems to me that the majority opinion has the effect of eroding *English, supra,* and establishing a case by case approach. The Bench and Bar alike no longer may home in on *English,* a well lit beacon, to guide them through the constitutional maze surrounding a plea of guilty. The trial court, the advocate and the accused are now cast adrift without a rudder. The majority opinion both saps *English* and extinguishes its bright light.

Chief Justice Vinson, in a dissenting opinion in *Trupiano v. United States,* 334 U. S. 699, 716, 68 S. Ct. 1229, 1238, 92 L.Ed. 1663, 1675 (1948), stated:

> "At best, the operation of the rule which the Court today enunciates for the first time may be expected to confound confusion in a field already. replete with complexities."

In my view the late Chief Justice Vinson may well have been writing about the instant case.

As I see it the majority equate the fact that an accused. must be informed that the trier of fact may not draw an unfavorable inference from the accused's failure to testify, with the accused's being told that a prosecuting attorney will not be allowed to make reference to a failure to testify.

Precisely how the two situations are analagous escapes me. "I do not understand; I pause; I examine," [2] but I still do not comprehend.

Furthermore, it is to be noted that the trial judge informed Mr. Davis that:

> "... [I]n order to make certain that you are entering your pleas of guilty to these three counts willingly, freely, knowingly and with *some* degree of intelligence, it is necessary that I ask you a few questions and determine that fact." (Emphasis supplied).

The law, as I understand it, does not provide that an accused enter the plea with *"some* degree of intelligence," but rather that the plea be intelligently made. *Williams v. State, supra.* If we, henceforth, are called upon to ascertain, in each case, whether the accused, "with *some* degree of intelligence," made and understood the full effect of a guilty plea, we tread upon a pit of quicksand, and the pit is bottomless. If the measure of intelligence required to enter a constitutionally valid plea of guilty is *"some* degree of intelligence," I fail to see how any such plea can be constitutionally infirm. Unless the accused is, in the vernacular "a vegetable," it is difficult to visualize a human being who does not possess *"some* degree of intelligence."

Without belaboring the issue needlessly, it follows that I would hold that the trial judge failed to comply with the rule of *English, supra,* and therefore, committed reversible error. I would reverse and remand for a new trial.

A final word is in order. If this Court is of the opinion that *English* is to be buried,[3] then we should, at the very least, provide it with a decent funeral, and not merely scuttle it by inference.

---

2. Michel Eyquem De Montaigne (1533-1592), *Inscription for his library.*

3. An opinion that I do not share.