ALBERT MILLER, JR. *v.* STATE OF MARYLAND

[No. 1330, September Term, 1975.]

*Decided July 30, 1976.*

The cause was argued before FREDERICK J. SINGLEY, JR., and MARVIN H. SMITH, Associate Judges of the Court of Appeals and DAVID ROSS, Associate Judge of the Eighth Judicial Circuit, all specially assigned.

*James J. Gitomer* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *William Monfried, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The appellant, Albert Miller, Jr., pleaded guilty to first degree murder in the Criminal Court of Baltimore (Liss, J.) on 2 June 1970 and was sentenced to life imprisonment. As a result of Miller's plea, the State nol prossed a robbery indictment and agreed to recommend life imprisonment, thus allowing Miller to avoid any possibility of the death penalty. Miller did not appeal.

On 23 October 1975, Miller filed a Petition for Relief under the Uniform Post Conviction Procedure Act, Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 645A, in which he alleged that:

". . . [he] was denied effective assistance of counsel in that a plea of guilty was entered as to first degree murder without the petitioner being advised of his privilege against self-incrimination."

This fact, the petition alleged, rendered the guilty plea void under the mandate of *Boykin v. Alabama,* 395 U. S. 238 (1969), as interpreted by *English v. State,* 16 Md. App. 439,

298 A. 2d 464 (1973), *cert. granted,* 268 Md. 748, *dismissed as improvidently granted,* 3 July 1973, and *Davis v. State,* 28 Md. App. 50, 343 A. 2d 550, *cert. granted,* 276 Md. 740 (1975), *aff'd,* 278 Md. 103 (1976).

A hearing was held on the petition in the Criminal Court of Baltimore (Sklar, J.), at which time argument by counsel for Miller was heard, but Miller was not interrogated. The State strenuously maintained that Miller had effectively waived any right to raise the *Boykin* question, see Code (1957, 1976 Repl. Vol.) Art. 27, § 645A (c); Maryland Rule BK48 (a). The relief sought was denied on both grounds presented: first, that Miller had waived the point, and, that even if there had been no waiver, Miller's guilty plea had been freely and voluntarily given. We granted leave to appeal, Rule BK46, and transferred the case to our regular appeal docket.

Miller has presented two questions for our consideration:

"1. Did not the Trial Court err in denying Appellant's Petition for Post Conviction Relief when it determined that Appellant's guilty plea was valid under the dictates of *Boykin v. Alabama*?

"2. Did not the Trial Court err in determining that the Appellant effectively waived his right to complain about the infirmity of his guilty plea?"

We are convinced that the question whether *Boykin v. Alabama, supra,* mandates the granting of the relief sought by Miller has been recently answered by the Court of Appeals in *Davis v. State, supra.* Miller primarily relies upon the earlier opinion in *Davis* written by the Court of Special Appeals, 28 Md. App. 50, 343 A. 2d 550 (1975) and upon *English v. State, supra.*

The interpretation given to *Boykin* by this Court in *Davis* and *English,* both *supra,* as well as in *Williams v. State,* 10 Md. App. 570, 271 A. 2d 777 (1970), *cert. denied,* 261 Md. 730 (1971); *McCall v. State,* 9 Md. App. 191, 263 A. 2d 19, *cert. denied,* 258 Md. 729 (1970) and *Silverberg v. Warden,* 7 Md. App. 657, 256 A. 2d 821 (1969) was essentially that:

"the due process clause of the Fourteenth

Amendment requires state trial judges to specifically inform defendants of the essential elements of their privilege against compulsory self-incrimination before accepting their guilty pleas . . . ." *Davis v. State, supra,* 278 Md. at 107.

In other words, unless the trial court performed a ritualistic litany in which the accused was told of his Constitutional rights, including those derived from the Fifth Amendment, *Boykin* would be violated. Judge Digges, for the Court of Appeals in *Davis,* after a scholarly review of the Supreme Court cases and the interpretation given *Boykin* in other jurisdictions, determined that our interpretation of *Boykin* was overly restrictive and that the proper interpretation should be:

> ". . . that *Boykin* does not stand for the proposition that the due process clause requires state trial courts to specifically enumerate certain rights, or go through any particular litany, before accepting a defendant's guilty plea; rather, we think *Boykin* merely holds that *the record must affirmatively disclose that the accused entered his confession of guilt voluntarily and understandingly." Davis v. State, supra,* 278 Md. at 114. (emphasis supplied).[1]

What the Constitution directs us to do in the instant case, therefore, is to determine whether Miller, under the totality of the circumstances, "entered his confession of guilt voluntarily and understandingly." This does not, however, require us to review the record of the hearing where Miller's plea was entered in order to determine if the trial court employed ·any particular prophylactic procedure before accepting the guilty plea.[2]

---

1. In *Boykin,* the record of the petitioner's hearing where he pleaded guilty was "wholly silent," 395 U. S. at 240, thus making it "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U. S. at 242. The situation is vastly different when the record discloses that the accused either was informed in open court or was already aware of the consequences of his decision to plead guilty.

2. It is noteworthy that the view taken by the Court of Appeals in *Davis* is shared by the federal courts, including the Fourth Circuit, see, *e.g.* Wade

The record reveals that Miller took the witness stand during the hearing at which he pleaded guilty and was interrogated in painstaking detail by his counsel. We shall extract from the transcript illustrative portions of that colloquy which we believe conclusively demonstrate that Miller was fully aware of the consequences of his plea of guilty. Preliminarily, we note that Miller had an unusually thorough understanding of the felony-murder doctrine, under which he had been indicted because the murder had occurred in the course of an armed robbery. This is evidenced by the following:

> "Q. [by Miller's counsel] Now give the Court your understanding of what first degree murder is when you kill someone in the course of a robbery.
>
> "A. [by Miller] First degree murder in the course of a robbery is when you go into the place with an intent to rob, and while the robbery is being committed, a murder is committed also at the same time.
>
>          * * *
>
> "Q. Now, is that what happened in this case.
> "A. Yes, it is."

There can be, therefore, no doubt that Miller understood the essential elements of the felony-murder doctrine and fully and voluntarily admitted that he entered a store with the intention of committing a robbery and that the victim was murdered in the course of that robbery. This satisfies the recent holding of the Supreme Court in *Henderson v. Morgan*, 44 U.S.L.W. 4910 (June 15, 1976), that a defendant who pleads guilty must be aware of the essential elements of the crime to which he pleads guilty.

The colloquy continued:

> "Q. All right. Now, you understand that when you

---

v. Coiner, 468 F. 2d 1059 (4th Cir. 1972); United States v. Frontero, 452 F. 2d 406 (5th Cir. 1971).

plead guilty, that you are going to give up your right to a trial by jury, you understand that?

"A. Yes, I do.

* * *

"A. My [Miller's] understanding of a jury trial is that a jury trial is twelve people selected from the community of the Baltimore City area . . . and, in accepting the facts, they bring about a verdict . . . whether the defendant is guilty or not guilty, either all the people say that I am, that the person is guilty, or he is not guilty by all the people.

* * *

"Q. Now, do you understand that you have an absolute right to this jury trial?

"A. Yes, I do.

* * *

"Q. Now, do you further understand that when you plead guilty, you are going to give up your rights to confront and to cross examine witnesses . . . your rights to have the state call witnesses . . . to testify on behalf of the state, to bring evidence against you — do you understand that you are giving that up?

"A. Yes, I do understand that.

* * *

"Q. Now, do you further understand, and did I explain to you that when you plead guilty, you must do this voluntarily; in other words, nobody can make you plead guilty, do you understand that?

"A. Yes, I do.

* * *

"Q. That you are intelligently giving it [the plea] . . . because, you know, and you are, in fact, guilty of murder in the first degree, because you did, in

fact, participate in this robbery, and a man was killed as a result of that participation —

"A. Right.

"Q. — is it correct?

"A. Yes, it is.

"Q. And no one has threatened you to give the plea?

"A. No one at all."

Miller also indicated that he thoroughly understood the nature of his plea bargain, that the State would recommend life imprisonment and would nol pros the robbery indictment, that he understood that he was waiving his right to appeal from his conviction other than on jurisdictional grounds or on the ground that the plea was involuntarily given.

This record was obviously the product of commendable effort and thorough preparation by Miller's counsel, Gerald Kroop, who had interviewed and advised his client at length. The inescapable conclusion, therefore, is that Miller knew precisely the consequences of his plea of guilty and did so voluntarily and freely with full knowledge of the constitutional rights which he thereby waived. While the references to the privilege against compulsory self-incrimination were, in the words of the trial judge, at best "crude," there is simply no longer, under *Davis v. State, supra,* 278 Md. at 103, any necessity that a ritualistic litany be performed as long as the accused comprehends the nature of his decision to plead guilty and does so of a free will.[3]

---

3. In his brief, Miller states that he was not advised of his privilege against self-incrimination during the course of the hearing where his plea was accepted by the trial court. While we agree that the record fails to indicate any precise reference to the privilege against self-incrimination, it is inconceivable to us that Miller had not been told of the privilege by his counsel prior to the hearing since it is abundantly apparent that Miller had been thoroughly schooled by Mr. Kroop, *see* Stevens v. State, 232 Md. 33, 192 A. 2d 73 (1963); State v. McKenzie, 17 Md. App. 563, 303 A. 2d 406 (1973). The burden was upon Miller to present evidence that he was unaware of his Fifth Amendment privilege, Maryland Rule BK48 (b). This failure to do so leads us to assume that no such circumstance existed. In any event, we need not concern ourselves with this problem, for we are convinced that the record overwhelmingly reveals the voluntary and knowing nature of Miller's plea.

Under the view that we take of this case, it becomes unnecessary for us to consider the question of Miller's waiver of the right to raise the question in a post conviction proceeding.

*Judgment affirmed; relief denied.*
*Appellant to pay costs.*